2012 COA 135

**Rosa PAYAN; Guadalupe Arroyo; Saloman Martinez; Debra Gomez; Antonio Esquibel; and Julia Morgan, Plaintiffs–Appellants,**

v.

**NASH FINCH COMPANY, d/b/a Avanza Supermarket, Defendant–Appellee.**

No. 11CA0570.

Colorado Court of Appeals, Div. VII.

Aug. 16, 2012.

As Modified on Denial of Rehearing Nov. 8, 2012.

Rehearing Denied Dec. 27, 2012.

Opinion by Judge TERRY.

¶ 1 Plaintiffs, Rosa Payan, Guadalupe Arroyo, Saloman Martinez, Debra Gomez, Antonio Esquibel, and Julia Morgan, appeal the trial court's order awarding attorney fees in their favor against defendant, Nash Finch Company, doing business as Avanza Supermarket (Nash Finch). Because we conclude the trial court erred in part of its calculation of the fee award, we affirm in part, reverse in part, and remand with directions.

## I. Background

¶ 2 In June 2008, Nash Finch implemented a misleading pricing scheme in two of its Denver metro area supermarkets. Customers were led to believe they would receive an additional 10% savings compared to regular prices, when in fact, the cashier added 10% to the price at check-out. Plaintiffs were customers at these supermarkets who did not immediately realize they had paid more than the advertised price.

¶ 3 In October 2008, the Colorado Department of Agriculture (DOA) initiated an informal investigation into Nash Finch's pricing system, which culminated in DOA's request that Nash Finch voluntarily discontinue the misleading pricing system. After receiving DOA's request, Nash Finch continued to add 10% at check-out, but changed its signage to state, "A charge of 10% will be added at the cash register."

¶ 4 Also in October 2008, attorneys Craig Silverman and David Olivas filed a class action complaint and jury demand against Nash Finch in Denver District Court. The complaint alleged the following five claims for relief: deceptive trade practices; fraudulent misrepresentation; negligent misrepresentation; civil theft; and violation of the Colorado Consumer Protection Act (CCPA), § 6–1–113(2), C.R.S.2011. The complaint was not served on Nash Finch, and the class action suit was voluntarily dismissed.

¶ 5 In November 2008, plaintiffs' counsel filed a complaint in Adams County District Court on behalf of plaintiffs Rosa Payan and Guadalupe Arroyo. That complaint was later amended to add Saloman Martinez as a plaintiff. Claims were asserted against Nash

David J. Dansky, Denver, Colorado, for Plaintiffs–Appellants.

Davis Graham & Stubbs LLP, Andrew M. Low, Geoffrey C. Klingsporn, Denver, Colorado, for Defendant–Appellee.

Finch for violation of the CCPA, common law unfair trade practices, fraud, negligent misrepresentation, and civil theft. A third attorney, William Silverman, entered an appearance on behalf of all plaintiffs.

¶ 6 Nash Finch moved to dismiss the complaint under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief could be granted. The court entered an order dismissing without prejudice plaintiffs' claims for violation of the CCPA, negligent misrepresentation, and civil theft, and allowed plaintiffs to amend the complaint. Plaintiffs' common law claim for unfair trade practices was dismissed with prejudice. Plaintiffs filed a second amended complaint in March 2009.

¶ 7 Plaintiffs' counsel also filed a complaint in Denver District Court raising claims against Nash Finch for violation of the CCPA, fraud, negligent misrepresentation, and civil theft on behalf of plaintiffs Debra Gomez, Antonio Esquibel, and Julia Morgan. The Adams County complaint and Denver County complaints were consolidated in the Adams County District Court.

¶ 8 The court scheduled a seven-day jury trial. Prior to trial, plaintiffs withdrew their intentional and negligent misrepresentation claims, noting that the misrepresentation claims largely overlapped with the CCPA claim, and the CCPA remedies were superior. Thus, only the CCPA and civil theft claims remained at the time of trial.

¶ 9 Nash Finch filed a motion for summary judgment, which was denied. Three days before trial, Nash Finch filed an admission of liability and confession of judgment for the full amount of the statutory damages sought by plaintiffs, a total of $4,200.

¶ 10 Plaintiffs moved to recover attorney fees under section 6–1–113(2)(b), which provides for a mandatory award of reasonable attorney fees and costs incurred in pursuing successful claims under the CCPA. According to the motion, plaintiffs' fee agreement with counsel stated only that plaintiffs would not be billed for attorney fees.

¶ 11 Plaintiffs asserted that $350 per hour was an appropriate hourly rate for each of the three plaintiffs' attorneys, and stated that the attorneys had spent a total of 2,258 hours litigating the case. Plaintiffs requested total fees of $790,647, and asked that a multiplier of 1.5 to 3 times be applied to that figure, given the circumstances of the case. Thus, their total requested fees ranged from $1,185,970 to $2,371,941.

¶ 12 Nash Finch contested the reasonableness of the fee request. Both parties disclosed expert opinions on the reasonableness of plaintiffs' requested attorney fees.

¶ 13 Four days after Nash Finch filed its response contesting plaintiffs' fee request, plaintiffs moved for expedited discovery of information pertaining to Nash Finch's own fees and costs. The trial court received briefing from both sides on the merits of the motion, and ultimately denied plaintiffs' discovery request.

¶ 14 The trial court held a one-day hearing on the motion for attorney fees, at which both sides presented expert witness testimony and argument. The trial court entered a detailed, twenty-page, single-spaced order awarding plaintiffs a total of $88,427 in attorney fees.

## II. Attorney Fee Award

¶ 15 Plaintiffs assert that the trial court's fee award was in error in numerous respects. As detailed below, we agree with some of their arguments, but not with others.

¶ 16 We review the reasonableness of a trial court's award of attorney fees for an abuse of discretion. *See Hartman v. Cmty. Responsibility Ctr., Inc.,* 87 P.3d 254, 257 (Colo.App.2004). The determination of reasonableness of attorney fees is a question of fact for the trial court, and its ruling will not be disturbed on review unless patently erroneous and unsupported by the evidence. *Tallitsch v. Child Support Servs., Inc.,* 926 P.2d 143, 147 (Colo.App.1996). Where a trial court misapplies the law, it abuses its discretion. *DeLong v. Trujillo,* 25 P.3d 1194, 1197 (Colo.2001).

### A. Calculation of the Lodestar Amount

¶ 17 Plaintiffs contend the trial court did not take the proper arithmetical steps in calculating the lodestar amount before it

made subsequent adjustments to that amount. Plaintiffs argue that this error resulted in an improperly reduced fee award. While we commend the trial court for aiding our appellate review by making detailed findings, we agree that the court erred in some of its calculations of the fees to be awarded.

¶ 18 A court makes an initial estimate of a reasonable attorney fee by calculating the lodestar amount. *Tallitsch*, 926 P.2d at 147. The lodestar amount represents the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate. *Id.* The court's calculation of the lodestar amount carries with it a strong presumption of reasonableness. *Id.; see also Hensley v.*

*Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### 1. Reduction of Billed Hours

¶ 19 Here, the trial court separated its findings into three main sections. The court first explained how it determined a reasonable hourly rate for plaintiffs' attorneys. The court then gave its rationale for determining how many hours were reasonably expended for the case. In a third section, the court explained its adjustments to the lodestar amount, and showed its calculations. The last page of the order shows the following chart representing the calculation of fees to be awarded:

| Item | % | $ | Notes |
|------|-----|-----|-------|
| Total request | | 790,647 | |
| Less request for hearing | | −49,620 | Reasonable amount = $12,100 |
| August 30, 2010 request | | 741,017 | |
| Reduced to $350 & $200/hour | | 508,850 | |
| | | | |
| Adjustments | | | |
| Block billing | −20 | | |
| Redundancies | −10 | | |
| Excessive conferences | −15 | | |
| Non-statutory claims (class action, fraud, etc.) | −12 | | |
| Amount in controversy | −8 | | |
| Complexity | −5 | | |
| Awards in similar cases | −5 | | |
| Degree of success achieved | 0 | | |
| Fixed or contingent fee | 0 | | |
| Public importance | −10 | | |
| **Total Percentage reduction** | 85% | $508,850 × 85% = $432,523 | |
| | | $76,327 | 508,850 − 432,523 = $76,327 |
| Add back fee hearing award | | $12,100 | |
| | | | |
| **Total fee award** | | **$88,427** | |

¶ 20 As these calculations show, the court multiplied the number of hours billed by plaintiffs' counsel (2,258) by what it deemed to be appropriate hourly rates for the various attorneys on the case to establish a baseline amount of $508,850.

¶ 21 However, as stated in *Tallitsch*, the court, in its broad discretion as the overseer of the litigation, must begin by determining the reasonable number of hours expended by counsel in working on the case. 926 P.2d at

147; *see also Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. The reasonable number of hours is then to be multiplied by the reasonable hourly rate to calculate the lodestar amount. *Tallitsch*, 926 P.2d at 147.

¶ 22 Here, the court's calculations reflect that it essentially used the $508,850 figure as the lodestar amount, and made deductions from that amount. In so doing, the court erred, because, as the court's order indicates, the lodestar calculation included an

unreasonable number of hours. The court made deductions of flat percentages from the lodestar amount based on the unreasonableness of the time expended. This is reflected in the deductions of 20% for block billing, 10% for redundancies, 15% for excessive conferences, and 12% for non-statutory claims. Added together, these deductions constitute a 57% reduction.

¶ 23 As the Supreme Court stated in *Hensley*, "[t]he district court ... should exclude from [the] initial [lodestar] calculation hours that were not 'reasonably expended.'" 461 U.S. at 434, 103 S.Ct. 1933. Deductions that should be taken at this initial stage include deductions for overstaffing and for hours that are "excessive, redundant, or otherwise unnecessary." *Id.; see also Tallitsch*, 926 P.2d at 147. The trial court here should have applied the percentage reductions to the total hours billed before applying the hourly rate multiplier.

¶ 24 We recognize that courts in other jurisdictions have approved a fee award adjustment for block billing by reducing the lodestar figure rather than deducting from the number of hours claimed. *See, e.g., Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir.2000). However, these cases are not binding here, and we are not aware of a Colorado case authorizing this approach.

¶ 25 The court's calculation of the lodestar amount was in error, and that amount should be recalculated on remand.

¶ 26 We next address the propriety of the trial court's percentage reductions to determine the "reasonable hours" component of the lodestar amount.

### 2. Adjustments to Billed Hours

¶ 27 Plaintiffs contend the trial court abused its discretion and committed legal error in making certain downward adjustments to counsel's billed hours. To the extent plaintiffs argue it was error for the court to reduce the billed hours after calculation of the lodestar amount, we agree. However, we disagree to the extent plaintiffs argue the court should not have reduced the billed time in determining the "reasonable hours" component of the lodestar amount.

### a. Block Billing

¶ 28 Plaintiffs argue that the trial court abused its discretion in reducing the fee award for block billing because block billing is not an independent justification for reducing a fee award. Plaintiffs further argue that their billing records are either not block billed at all or are block billed "only in a sense," and thus, an across-the-board percentage cut is an impermissible form of double counting. We disagree.

¶ 29 "Block billing is a form of time-keeping that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities." *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 277 F.Supp.2d 323, 325 n. 3 (S.D.N.Y.2003) (quoting *Rodriguez v. McLoughlin*, 84 F.Supp.2d 417, 425 (S.D.N.Y.1999)). C.R.C.P. 121, section 1–22 does not require counsel to use a particular type of billing format; nor does it prohibit block billing. *See* Colo. RPC 1.5 cmts.; *Crow v. Penrose–St. Francis Healthcare Sys.*, 262 P.3d 991, 1000 (Colo.App.2011). However, a trial court retains discretion to reduce the hours billed based on block billing if the court is unable to determine whether the amount of time spent on various tasks was reasonable. *See Crow*, 262 P.3d at 1000; *see also Hensley*, 461 U.S. at 437, 103 S.Ct. 1933 (holding that fee applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir.2007) ("We do not quarrel with the district court's authority to reduce hours that are billed in block format. The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.").

¶ 30 Here, the trial court found that block billing was a deviation from the standard practice in Colorado, and noted that "across-the-board percentage cuts are routinely employed by courts to remedy such block billing." *See Bobrow Palumbo Sales, Inc. v. Broan–Nutone, LLC*, 549 F.Supp.2d 274, 283 (E.D.N.Y.2008). Citing a California study that found block billing resulted in a 10% to

30% increase in time shown in billing statements, the trial court followed the Ninth Circuit's approach, and concluded that a 20% downward adjustment for block billing was acceptable. *See Welch*, 480 F.3d at 948 (discussing State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03–01 (2003)). We see no reason to disagree with the trial court's conclusion in this regard.

¶ 31 We also reject plaintiffs' contention that the trial court abused its discretion when it imposed a reduction for block billing because plaintiffs' counsel's bills were not block billed at all or were block billed "only in a sense." The record supports the trial court's finding that plaintiffs' counsel engaged in block billing. *See Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1082–83 (10th Cir.1998) (recognizing trial court's authority to make a general reduction in attorney fees rather than a line-by-line determination).

¶ 32 Because the trial court was vested with the discretion to make a percentage reduction for block billing, and the amount of the reduction was not arbitrary, but based on a California study cited in various opinions, we conclude that the trial court did not abuse its discretion in taking a percentage reduction for block billing.

b. Billing for Dismissed Claims

¶ 33 Plaintiffs next contend the trial court abused its discretion by making a reduction for time spent on dismissed claims and the class action complaint. We are not persuaded.

¶ 34 Our supreme court has discussed with approval the approach set forth in *Hensley* for determining an appropriate award of attorney fees where the applicant was successful on only a portion of the pursued claims. *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1073 (Colo.2010).

The [Supreme] Court [in *Hensley* ] determined that, where a plaintiff had brought multiple claims "involv[ing] a common core of facts" or "based on related legal theories," counsel's efforts on an individual claim could not be distinguished from work on the whole of the litigation, and thus a reduction in the fee award for work done on unsuccessful claims would be inappropriate. On the other hand, where the plaintiff presented "distinctly different claims for relief that [were] based on different facts and legal theories," the litigation could be justly conceived as a "series of discrete claims" that had been "raised in separate lawsuits," and so a fee award that contemplated only those claims on which the plaintiff had succeeded was both practicable and necessary to [e]ffect the purpose of the fee-shifting statute.

*Id.* (quoting *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933) (citation omitted).

¶ 35 However, we note that it is not the court's burden "to justify each dollar or hour deducted from the total submitted by counsel. It remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau*, 801 F.2d 1197, 1210 (10th Cir.1986).

The fee applicant ... must ... submit appropriate documentation to meet "the burden of establishing entitlement to an award." ... [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation." We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

*Fox v. Vice*, —— U.S. ——, ——, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011) (citations omitted) (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933).

¶ 36 In its order, the trial court acknowledged that only the fees related to the CCPA and civil theft claims are awardable to counsel. It stated that fees incurred in connection with the abandoned class action, unfair

trade practices, fraud, and negligent misrepresentation claims (non-statutory claims) cannot be awarded under sections 6–1–113(2) and 18–4–405, C.R.S.2011, except to the extent that the work on the latter claims also contributed to work necessary for the CCPA and civil theft claims. The court then reduced the fee award by 12%.

¶ 37 Plaintiffs argue that the 12% reduction was arbitrary because only 79 hours were expended on the class action suit (totaling 3.7% of the total hours). Furthermore, according to plaintiffs, it was legal error under *Hensley* to make any reduction for the other non-statutory claims because they arose from the same facts as did the CCPA and civil theft claims. However, there was no proof submitted regarding the 79 hours figure. Rather, that figure represents a rough estimate made by *Nash Finch* in its trial court briefing as to the amount of time plaintiffs might have expended on the class action claim, and the court was not bound by it. Plaintiffs failed to present any proof as to the number of hours actually spent on the non-statutory claims. Given the lack of such proof, we will not disturb the trial court's decision based on its superior understanding of the litigation.

### c. Complexity

¶ 38 Initially, we reject plaintiffs' argument that the trial court erred in making a reduction for lack of complexity. According to plaintiffs, the case was vigorously contested and Nash Finch raised a number of sophisticated arguments concerning the viability of plaintiffs' CCPA claim. Conversely, Nash Finch points to plaintiffs' pretrial admission that the case was "simple, straightforward, and easily comprehended."

¶ 39 We conclude that the trial court did not err in its estimation of the complexity of the issues. That court was in the best position to observe and determine the relative complexity of the issues and arguments presented to it. We discern no basis in the record to overturn its assessment that the issues were not complex.

¶ 40 Plaintiffs also contend the trial court abused its discretion in adjusting the lodestar amount on the ground that the case lacked novel or complex issues. Although we conclude that the trial court's reduction of 5% for lack of complexity is not an abuse of discretion, we agree in principle with plaintiffs' further contention that this reduction should have been addressed in the trial court's determination of the reasonable number of hours expended in calculating the lodestar amount.

¶ 41 Complexity of the case has been recognized as a factor that may be considered in determining whether to adjust the lodestar amount. *See Stuart v. N. Shore Water & Sanitation Dist.*, 211 P.3d 59, 63 (Colo.App. 2009); *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 608 (Colo.App.2008); *Tallitsch*, 926 P.2d 143; *Spensieri v. Farmers Alliance Mut. Ins. Co.*, 804 P.2d 268, 271 (Colo.App. 1990); *see also* Colo. RPC 1.5(a)(1) (listing "novelty and difficulty of the questions involved" as factors in determining reasonable fee award). However, to avoid double-penalizing fee applicants, courts recognize that "many of [the lodestar adjustment] factors will be reflected in the lodestar amount, and no adjustments should be made if the lodestar amount already reflects these considerations." *Spensieri*, 804 P.2d at 271.

¶ 42 Many federal courts have taken a different approach. These courts have held that making a downward adjustment based on lack of complexity of issues *after* determination of the lodestar amount undermines the policy behind fee-shifting provisions in private attorney general statutes. *See Cooper v. Utah*, 894 F.2d 1169, 1173 (10th Cir. 1990). In *Cooper*, the Tenth Circuit opined:

> Reducing the lodestar amount on the ground of non-novelty or simplicity of issues does not promote the policies underlying the enactment of Section 1988. Those policies tend to encourage vindication of civil rights violations by private enforcement of the civil rights laws. These policies may be better served by including the simplicity of issues in a court's determination of the hours reasonably devoted to the successful prosecution of the lawsuit. To do otherwise would indeed penalize the attorneys and consequently claimants who seek to vindicate themselves of civil rights violations, despite the simplicity of the vio-

lation. Reducing the lodestar amount because the issues are simple could lead to the incongruous result of attorneys being less likely to take cases where a person's civil rights have been obviously and clearly violated.

*Id.* at 1172; *see also Perdue v. Kenny A.,* 559 U.S. 542, 552–54, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010) (complexity of case subsumed in the lodestar calculation); *Millea v. Metro–North R.R.,* 658 F.3d 154, 167 (2d Cir.2011); *Morales v. City of San Rafael,* 96 F.3d 359, 363–64 n. 9 (9th Cir.1996) (court presumes that novelty and complexity of the issues are subsumed in the initial lodestar calculation), *amended,* 108 F.3d 981 (9th Cir. 1997).

¶ 43 Here, the determination of whether to make a deduction based on complexity from the initial "reasonable hours" calculation, on the one hand, or from the lodestar amount, on the other, will affect the size of the resulting fee award. None of the previously cited Colorado decisions addressed the relative merits of whether to make the deduction in one place versus the other. We conclude that the reasoning of the federal decisions we have cited is persuasive. In our view, taking a downward adjustment for lack of complexity in the "reasonable hours" portion of the initial lodestar calculation better serves the policy of encouraging counsel to act as private attorneys general in the pursuit of meritorious claims with the prospect of limited damages.

¶ 44 However, we would be hard pressed to say that the trial court abused its discretion in deciding to make the complexity deduction from the lodestar amount, given the Colorado appellate case law stating that such a deduction may be appropriate. On remand, the trial court has discretion whether to make the complexity reduction in either part of the calculation, but not in both.

### 3. Reasonable Hourly Rate

¶ 45 We next address plaintiffs' contention that the trial court erred in determining reasonable hourly rates for plaintiffs' counsel based on its view of appropriate staffing of the case. We disagree that the trial court's adjustments to counsels' hourly rates constituted an abuse of discretion.

¶ 46 A trial court should award attorney fees based on the prevailing market rate by private lawyers in the community. *Balkind v. Telluride Mountain Title Co.,* 8 P.3d 581, 588–89 (Colo.App.2000); *Spensieri,* 804 P.2d at 270; *see also* Colo. RPC 1.5 (listing experience, reputation, and ability of the lawyers performing the services as factors in determining appropriate attorney fees). The trial court is vested with broad discretion to determine whether the fees requested by a particular legal team are justified for the particular work performed and the results achieved in a particular case. *See Moreno v. City of Sacramento,* 534 F.3d 1106, 1114 (9th Cir.2008).

¶ 47 Here, the trial court determined, based on the expert testimony presented and the experience and background of the attorneys, that $350 was an appropriate hourly rate for each of plaintiffs' attorneys *individually.* However, considering the nature of the case and the manner in which it could have been staffed, the trial court determined that it was unreasonable to calculate the lodestar amount using the hourly rate of $350 for each attorney, and reduced two of the attorneys' rates to $200.

¶ 48 The court's order stated:

Although the $350.00 hourly rate is reasonable for each of [p]laintiffs' attorneys individually, it is unreasonable to award fees based [on] three senior attorneys each billing at senior attorney rates. As Defendant's expert testified, the usual staffing practice would involve one senior attorney assisted by one or more junior attorneys.

. . . .

Both experts agreed that $350.00 per hour was ... a reasonable rate for the "lead" attorney. Determining a reasonable hourly rate for a junior attorney is assisted by [p]laintiffs' fee agreements. Although the fee agreements did not obligate [p]laintiffs to pay any attorney fees whatever, the agreements included hourly "conversion clauses." Four of the [p]laintiffs had conversion clauses at $350.00 per hour. Two had conversion clauses at

$250.00 per hour. The range of $250.00 − $350.00 per hour is an acceptable range for a lead attorney. It is reasonable to award a lesser rate for a junior attorney.

A junior attorney rate of $200.00 per hour will be used for two of [p]laintiffs' attorneys. Because junior attorneys generally provide the bulk of the hours worked in a case, the senior attorney rate will be applied to the [p]laintiffs' counsel who provided the fewest hours.

¶ 49 The trial court was in the best position to assess the complexity and staffing demands for this litigation. The court did not abuse its discretion in determining that there was no justification to have each of three attorneys billing at such a high rate for a case of this type.

¶ 50 We also discern no abuse of discretion in applying a rate of $350 per hour for the attorney who billed the least number of hours, while applying a rate of $200 per hour for the other two attorneys. While plaintiffs cite *Moreno*, 534 F.3d at 1114, for the proposition that a trial court may not base its determination of reasonable hourly rates on its opinion of how a hypothetical law firm might staff the case, we are not bound by that decision of the Ninth Circuit. Nor do we think the trial court was prohibited from considering typical legal staffing decisions in making its fee determinations here.

## B. Adjustments to the Lodestar Amount

¶ 51 Having determined that certain of the trial court's reductions should have been made in calculating the initial lodestar amount, we now turn to plaintiffs' assertions of error pertaining to those items that may properly be addressed as adjustments to the lodestar amount.

### 1. Amount in Controversy

¶ 52 Plaintiffs maintain that the trial court abused its discretion by reducing the fee award based on the amount in controversy. We disagree.

¶ 53 Plaintiffs correctly assert that Colorado courts have rejected the rule of proportionality. *Tallitsch*, 926 P.2d at 147–48. Nonetheless, a trial court is not precluded from considering the amount in controversy when awarding attorney fees. *Id.; see also* Colo. RPC 1.5 (listing "amount involved and the results obtained" as factors in determining reasonable attorney fees).

¶ 54 Here, the trial court correctly determined that the rule of proportionality could not be applied. Having done so, it did not err in considering the amount in controversy in making a lodestar adjustment. *Tallitsch*, 926 P.2d at 148 (endorsing a similar approach).

### 2. Public Importance

¶ 55 Plaintiffs next contend it was error for the trial court to make a downward adjustment to the lodestar amount on the ground that the case was of minimal public importance. Plaintiffs note that, to succeed on their CCPA claim, they were required to prove that an unfair or deceptive trade practice had a significant impact on the public as actual or potential consumers. Because they recovered on this claim, plaintiffs argue that, of necessity, their claim could not have been of minimal public importance. We are not persuaded.

¶ 56 As the trial court's order noted, both parties' experts testified that public importance or public benefit is an important factor in adjusting the lodestar amount. The court's 10% reduction to the lodestar amount was based on its findings that (1) before plaintiffs filed suit, DOA had already identified Nash Finch's offending conduct and had sent it a "cease and desist" notice, with which it complied, and (2) plaintiffs were aware that the offending conduct had ended before they filed suit.

¶ 57 The record supports the conclusion that plaintiffs' suit was not a factor in inducing Nash Finch to cease its improper conduct. Under these circumstances, we perceive no error in the court's 10% reduction in the lodestar amount for lack of public importance. *See Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (technical nature of a nominal damages award bears on propriety of fees awarded under 42 U.S.C. § 1988, and where only nominal damages were recovered, court may

decline to award attorney fees); *Stowe v. Bologna,* 417 Mass. 199, 629 N.E.2d 304, 307 (1994) (upholding reduction in fee award based on lack of public importance of issues involved), *abrogated on other grounds by Fabre v. Walton,* 441 Mass. 9, 802 N.E.2d 1030 (2004); *cf. Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake,* 771 F.2d 1153, 1160 (8th Cir.1985) ("In rare circumstances the district court can increase a fee award because of the quality of the work performed or the great public importance of the case.").

## C. New Calculation

¶ 58 We conclude that a remand to the trial court is necessary for that court to recalculate the amount of fees to be awarded based on the principles set forth herein.

## III. Discovery of Billing Records of Defendant's Counsel

¶ 59 Plaintiffs argue that the trial court abused its discretion in denying their motion for discovery of Nash Finch's billing records. We disagree.

¶ 60 C.R.C.P. 121, section 1–22(2)(b) provides that "[t]he court *may* permit discovery on the issue of attorney fees only upon good cause shown when requested by any party." (Emphasis added.) Discovery rulings are within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Tallitsch,* 926 P.2d at 149.

¶ 61 In denying plaintiffs' request for expedited discovery concerning Nash Finch's attorney fees and expenses, the trial court relied on the following considerations:

- The parties' experts had already finalized their reports without the assistance of defendant's billing records, and the parties had already exchanged those reports.
- The evidentiary hearing on the reasonableness of attorney fees was scheduled for one day, and, given the limited amount of time for each side's presentation, the extensive costs for defendant to produce the information would yield only marginal benefit to plaintiffs.

- The burden on defense counsel in producing the information would be unfair.
- The court feared that the request for attorney fees would result in a "second major litigation."
- The request to expedite the complex production would place an undue and unfair burden on Nash Finch.

¶ 62 The trial court weighed the potential benefits of plaintiffs' expedited discovery request against the burden it posed to Nash Finch, and concluded the burden outweighed the benefit. We see no abuse of discretion in this decision given that both experts were able to produce their reports without the aid of such discovery.

## IV. Appellate Attorney Fees

¶ 63 Finally, plaintiffs assert that they should be awarded their attorney fees on appeal. We agree that, under section 6–1–113(2)(b), plaintiffs are entitled to an award of their reasonable appellate attorney fees. We exercise our discretion under C.A.R. 39.5 to remand this issue to the trial court to determine the total amount of plaintiffs' reasonable fees incurred on appeal and to award those fees. *See Martin v. Essrig,* 277 P.3d 857, 862–63 (Colo.App.2011).

## V. Conclusion and Directions on Remand

¶ 64 The order is reversed in the following respects:

(1) to the extent the trial court made adjustments to the lodestar amount for unreasonably billed hours, instead of calculating these deductions in the "reasonable hours expended" component of the lodestar calculation;

(2) to the extent it calculated the total amount of fees to be awarded.

¶ 65 In all other respects, the order is affirmed.

The case is remanded for further proceedings consistent with this opinion. On remand, the trial court should recalculate the reasonable number of hours expended, in accordance with the principles discussed herein, taking into account any deductions for block billing, redundancies, excessive conferences, and dismissed claims.

¶ 66 After determining the reasonable number of hours expended, the trial court should multiply that number of hours by the trial court's determined reasonable hourly rates to calculate the new lodestar amount.

¶ 67 The court may then make adjustments to the lodestar amount consistent with the principles announced herein. Finally, the court should determine and award to plaintiffs their reasonable attorney fees incurred on appeal.

Judge FOX concurs.

Judge BOORAS dissents.

Judge BOORAS dissenting.

¶ 68 I respectfully dissent from the majority's decision reversing the trial court's order awarding attorney fees to plaintiffs.

¶ 69 As the majority recognizes, an award of attorney fees must be reasonable. *Tallitsch v. Child Support Services, Inc.*, 926 P.2d 143, 147 (Colo.App.1996). The determination of reasonableness is a question of fact for the trial court and "will not be disturbed on review unless it is patently erroneous and unsupported by the evidence." *Spensieri v. Farmers Alliance Mut. Ins. Co.*, 804 P.2d 268, 270 (Colo.App.1990).

¶ 70 The United States Supreme Court provided guidance in *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), for determining the amount of a reasonable fee:

The *most useful starting point* for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate [lodestar amount]. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Id.* at 433, 103 S.Ct. 1933 (emphasis added). Accordingly, the Colorado courts have endorsed calculation of a lodestar amount as a method of determining attorney fees that

"carries with it a strong presumption of reasonableness." *Spensieri*, 804 P.2d at 270.

¶ 71 Here, as explained in the majority opinion, the trial court calculated a lodestar amount by initially accepting the number of hours submitted by plaintiffs' counsel and multiplying those hours by an adjusted fee. The court then reduced this amount by various percentages for block billing, redundancies, excessive conferences, and non-statutory claims. The trial court explained its rationale for these calculations in a detailed, twenty-page, single-spaced order. The majority concludes that the trial court's calculation was in error because the trial court should have applied the percentage reduction to the billable hours before multiplying by the hourly rate.

¶ 72 I disagree with the majority that the trial court's lodestar calculation was erroneous. In my view, the trial court's method was a permissible method or variation of performing the lodestar calculation as set out in *Hensley*, and thus, was not an abuse of discretion. In *Hensley*, in the context of an adjustment for "results obtained," the Supreme Court stated:

There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

*Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933.

Similarly, the United States Court of Appeals for the Seventh Circuit has noted:

The division of issues between those relevant to computing a lodestar and those relevant to adjustments is not always consistent. . . . The district court can make an adjustment in the process of computing a lodestar or after computing a lodestar, so long as the court provides an explanation for each adjustment and does not adjust for the same factor twice.

*Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651 n. 3 (7th Cir.1985). Other

courts have approved an adjustment for block billing or inadequate documentation of hours by reducing the final lodestar figure rather than the number of hours claimed. *See Harper v. City of Chicago Heights,* 223 F.3d 593, 604–05 (7th Cir.2000) (acknowledging that when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or reduce the proposed fee by a reasonable percentage); *Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir.1992) ("when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure"); *In re Olson,* 884 F.2d 1415, 1430 (D.C.Cir.1989) (after disallowing certain fees, the remaining fees were reduced ten percent to disallow fees for services that were "excessive, redundant, unnecessary, or inadequately documented"); *Humphrey v. United Way,* 802 F.Supp.2d 847, 864–65 (S.D.Tex.2011) (because block billing entries "lumped together" too many tasks and made it impossible for the court to determine whether the amount of time for any one entry was reasonable, court reduced fees by five percent).

¶ 73 The majority dismisses the variations of the *Hensley* lodestar calculation used by other jurisdictions as "not binding" and notes that no Colorado case authorizes a different approach. However, I believe that the more relevant question under an abuse of discretion standard is whether any previous Colorado case prohibits the calculation that the trial court used here. *See, e.g., Williams v. Leach,* 194 Colo. 374, 375–76, 572 P.2d 481, 482–83 (1977) (trial court did not abuse its discretion in allowing a reasonable time for correction of insufficient extradition documents where no statute specifically authorized a continuance for the correction of insufficient documents, but no statute prohibited such). I am not aware of any case that requires a particular mathematical lodestar calculation to the exclusion of a different reasonable method. Additionally, the Court in *Hensley* characterized the "reasonable hours multiplied by a reasonable hourly rate" calculation as "the most useful starting point," rather than as a "mandatory" method

of initial calculation. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

¶ 74 Although the majority reads *Tallitsch* as holding that the lodestar calculation "must begin" by determining the reasonable number of hours expended by counsel in working on the case, I do not read *Tallitsch* as setting out a mandatory starting point. Rather, a division of this court simply approved the standard lodestar calculation used by the trial court in that case. An alternative mathematical calculation was not at issue. *Tallitsch,* 926 P.2d at 148.

¶ 75 Here, the trial court acknowledged the difficulty caused by block billing in determining a reasonable number of hours because it precluded an analysis of the billing records. The court selected the twenty percent reduction of the award based on a 2003 California study that found block billing typically resulted in a ten percent to thirty percent increase in time shown in billing statements. Thus, the court's adjustment was not arbitrary or unexplained. Because the court initially accepted plaintiffs' requested hours without adjustment, and then adjusted for block billing and other matters by reducing the final fee award, the court did not adjust for the same factor twice. Finally, instead of relying solely on its mathematical calculations, the court reviewed the final attorney fee determination and concluded that "the overall result reflects a reasonable and generous award for a case with *de minim[i]s* damages and *de minim[i]s* public importance."

¶ 76 In my view, it was within the trial court's discretion to make an adjustment for block billing by reducing the entire award instead of reducing the number of billed hours. This method is in accord with the Supreme Court's observation in *Hensley* that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

¶ 77 Therefore, I would affirm the trial court's award of attorney fees.