573 So.2d 326 (1991)
Daniel LEFEMINE, et al., Petitioners,
v.
Judith W. BARON, et al., Respondents.
No. 75806.
Supreme Court of Florida.
January 3, 1991.
*327 Joe N. Unger of the Law Offices of Joe N. Unger, P.A., and Gary S. Rackear, Miami, for petitioners.
Rhea P. Grossman of Rhea P. Grossman, P.A., Miami, and Joseph L. Schneider, Hollywood, for respondents.
GRIMES, Justice.
We review Lefemine v. Baron, 556 So.2d 1160 (Fla. 4th DCA 1990), based upon express and direct conflict with Cortes v. Adair, 494 So.2d 523 (Fla. 3d DCA 1986). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
Daniel and Catherine Lefemine entered into a real estate contract to purchase a residence from Judith W. Baron for $385,000. The Lefemines were unable to obtain financing and sued Baron for return of their $38,500 deposit. Baron counterclaimed to retain the deposit money as liquidated damages pursuant to the default provision in the contract. The broker, S & N Kurash, Inc., cross-claimed against Baron for one-half of any recovery on the counterclaim. The trial court found that (1) the Lefemines defaulted under the terms of the contract, (2) the default provision in the contract was a bona fide liquidated damages clause, and (3) the amount of damages, the $38,500 deposit, was not unconscionable. Thus, the court ruled in favor of Baron on her counterclaim and in favor of the broker on his cross-claim, finding each to be entitled to one-half of the $38,500 deposit.
The Fourth District Court of Appeal affirmed the judgment, concluding that the default provision was enforceable and that the amount forfeited was not unconscionable. The court rejected the conflicting rationale of the Third District Court of Appeal in Cortes.
The issue before this Court is whether the default provision in the real estate contract was enforceable as a liquidated damages clause or was an unenforceable penalty clause. The default provision reads as follows:
1. DEFAULT BY BUYER: If Buyer fails to perform the Contract within the time specified, the deposit(s) made or agreed to be made by Buyer may be retained or recovered by or for the account of Seller as liquidated damages, consideration for the execution of the Contract and in full settlement of any claims; whereupon all parties shall be relieved of all obligations under the Contract; *328 or Seller, at his option, may proceed at law or in equity to enforce his rights under the Contract.
It is well settled that in Florida the parties to a contract may stipulate in advance to an amount to be paid or retained as liquidated damages in the event of a breach. Poinsettia Dairy Prods. v. Wessel Co., 123 Fla. 120, 166 So. 306 (1936); Southern Menhaden Co. v. How, 71 Fla. 128, 70 So. 1000 (1916). In Hyman v. Cohen, 73 So.2d 393 (Fla. 1954), this Court established the test as to when a liquidated damages provision will be upheld and not stricken as a penalty clause. First, the damages consequent upon a breach must not be readily ascertainable. Second, the sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages.
We agree with the court below that the forfeiture of the $38,500 deposit was not unconscionable. The deposit represented only ten percent of the purchase price and half of this had to be paid to the broker. The $38,500 was not so grossly disproportionate to any damages that might reasonably be expected to follow from a breach of the contract so as to show that the parties intended only to induce full performance. See Hooper v. Breneman, 417 So.2d 315 (Fla. 5th DCA 1982). The controversy in this case arises from the existence of the option granted to the seller either to retain the security deposit as liquidated damages or to bring an action at law for actual damages.
In Stenor, Inc. v. Lester, 58 So.2d 673 (Fla. 1951), this Court held that a lease provision which gave the lessor an option either to retain the deposit as liquidated damages or to apply it pro tanto against his actual damages constituted a penalty clause rather than an enforceable liquidated damages clause. Accord Glynn v. Roberson, 58 So.2d 676 (Fla. 1952).
The following year in Kanter v. Safran, 68 So.2d 553, 562 (Fla. 1953), this Court invalidated a lease provision which permitted the lessor to retain the security deposit upon the lessee's breach and further provided that the lessor "`may call upon the lessee to respond for any existing damages, should the actual damages exceed the amount of the security fund.'" We stated:
It is apparent that the parties to the lease agreement in the instant case did not intend to liquidate their damages by stipulating for the forfeiture of the deposit upon cancellation of the lease by the lessor for the default of the lessee.
Paragraph (b), supra, expressly states that the lessors "may call upon the lessee to respond for any existing damages, should the actual damages exceed the amount of the security fund * * *." Under such circumstances, the provision for forfeiture cannot be sustained as a provision for liquidated damages. See Stenor, Inc., v. Lester, Fla., 58 So.2d 673.
Kanter, 68 So.2d at 562.
In Pappas v. Deringer, 145 So.2d 770 (Fla. 3d DCA 1962), the Third District Court of Appeal considered a provision which gave the lessor the option of retaining the security deposit as liquidated damages if the lessee defaulted. The court first reasoned that except for the option which was granted to the lessor, this provision met the two-prong test of Hyman for a valid liquidated damages clause. The court then observed:
[W]hat is the effect of the option of the lessor? If the lessor failed to exercise his option, the lessee would be entitled to receive all of the unrefunded deposit; but he would at the same time be liable for the actual damages. It stands to reason that the option would be exercised unless the actual damages were greater than the security deposit. Thus the lessee is in the position of being liable to lose the security deposit or pay the actual damages, whichever is greater.
Pappas, 145 So.2d at 772. The court held:
[A]n option granted to the lessor to either take the stipulated amount (security deposit) as damages or to refuse to be limited by that amount and thus become entitled to a greater amount of damages, *329 destroys the character of the forfeiture as agreed damages and the forfeiture becomes a penalty.
Id. at 773.
This principle was first applied to a real estate sales contract in Cortes.[1] The default clause, which was almost identical to that involved in the instant case, read as follows:
Q. DEFAULT: If buyer fails to perform this contract within the time specified, the deposit paid by buyer may be retained by or for the account of seller as consideration for the execution of this agreement and in full settlement of any claims for damages, and all obligations under this contract or seller at his option may proceed at law or in equity to enforce his legal rights under this contract.
Cortes, 494 So.2d at 524. The court reversed the award of the deposit as liquidated damages upon the authority of its earlier decision in Pappas.
Baron contends that Cortes is distinguishable because it was decided upon the unreasonable disparity in remedy alternatives available to sellers and buyers, while in this case no disparity exists between the seller and buyers. This argument is grounded upon a reference to the lack of mutuality contained in the Cortes opinion as well as in some of the other cases discussed in this opinion. However, we do not read Cortes or any of the prior cases in which the term "mutuality" appears as meaning that an option by one party either to retain the deposit or to seek actual damages is enforceable whenever the other party also has a right to choose remedies.[2] The phrase "mutuality of the agreement" used in the Pappas opinion and cited in Cortes was not meant to impose a requirement that the parties to a contract have identical remedies.[3] Rather, we interpret these opinions to mean that the existence of the option reflects that the parties did not have the mutual intention to stipulate to a fixed amount as their liquidated damages in the event of a breach.[4]
We also disagree with Baron's argument that this Court's decision in Hutchison v. Tompkins, 259 So.2d 129 (Fla. 1972), is controlling. We reviewed the decision in Hutchison v. Tompkins, 240 So.2d 180 (Fla. 4th DCA 1970), to resolve a conflict with this Court's prior opinion in Hyman. Under the rationale of the Fourth District Court of Appeal, a liquidated damages clause would constitute a penalty if the damages were readily ascertainable at the time of breach, regardless of whether the damages were not ascertainable at the time the contract was executed. By contrast, in Hyman this Court had decided that in order for a liquidated damages clause to be construed as a penalty it was necessary for the damages to be readily ascertainable at the time of the drawing of the contract. In Hutchison we reaffirmed the validity of the Hyman rationale and held the liquidated damages clause could stand if the damages were not readily ascertainable at the time of the drawing of the contract. While it appears that the forfeiture clause in Hutchison gave the seller the option to retain the deposit as liquidated damages, the effect of the existence of the option was not an issue in the case.
The reason why the forfeiture clause must fail in this case is that the option granted to Baron either to choose liquidated damages or to sue for actual damages indicates an intent to penalize the defaulting buyer and negates the intent to liquidate damages in the event of a breach. The buyer under a liquidated damages provision *330 with such an option is always at risk for damages greater than the liquidated sum. On the other hand, if the actual damages are less than the liquidated sum, the buyer is nevertheless obligated by the liquidated damages clause because the seller will take the deposit under that clause. Because neither party intends the stipulated sum to be the agreed-upon measure of damages, the provision cannot be a valid liquidated damages clause.
The decision we reach today is in harmony with authorities from other jurisdictions. Real Estate World, Inc. v. Southeastern Land Fund, Inc., 137 Ga. App. 771, 224 S.E.2d 747 (Ct.App. 1976), overruled on other grounds, Mock v. Canterbury Realty Co., 152 Ga. App. 872, 264 S.E.2d 489 (Ct.App. 1980); Jarro Bldg. Indus. Corp. v. Schwartz, 54 Misc.2d 13, 281 N.Y.S.2d 420 (App. Term 1967); Dalston Constr. Corp. v. Wallace, 26 Misc.2d 698, 214 N.Y.S.2d 191 (Dist.Ct. 1960). In J. Calamari & J. Perillo, The Law of Contracts § 14-32, at 645 (3d ed. 1987), the authors state:
§ 14-32. Two Pitfalls of Draftsmanship:
The Shotgun Clause and the Have Cake and Eat It Clause
... .
Another pitfall into which contract draftsmen have plunged involves an attempt to fix damages in the event of a breach with an option on the part of the aggrieved party to sue for such additional actual damages as he may establish. These have been struck down as they do not involve a reasonable attempt definitively to estimate the loss.
See also Comment, Liquidated Damages: A Comparison of the Common Law and the Uniform Commercial Code, 45 Fordham L.Rev. 1349, 1367-68 (1977).
We hold that the default provision in the subject contract was not enforceable as a liquidated damages clause. The provision constituted a penalty as a matter of law because the existence of the option negated the intent to liquidate damages.[5] We quash the decision below with directions to remand the case for a trial on the actual damages incurred by Baron as a result of the breach of contract.
It is so ordered.
SHAW, C.J., and OVERTON, EHRLICH, BARKETT and KOGAN, JJ., concur.
McDONALD, J., dissents.
NOTES
[1] The difference between a real estate sales contract and a lease does not affect the analysis of whether a given liquidated damages clause is valid under general principles of law pertaining to contracts and damages.
[2] Significantly, none of these cases even discussed the contractual remedies which may have been available to the other party.
[3] We recognize that a lack of mutuality of remedies between the parties may be a separate reason why a court may refuse to enforce a default provision of a contract. See Blue Lakes Apartments, Ltd. v. George Gowing, Inc., 464 So.2d 705 (Fla. 4th DCA 1985).
[4] See Aron & Perry, Default Provisions in Contracts for the Sale of Real Property, 61 Fla. B.J. 109 (1987), in which the authors make a similar analysis of the Cortes opinion.
[5] We express no opinion with respect to whether the same result would occur if the Uniform Commercial Code were applicable to this transaction, nor do we imply that a liquidated damages clause which merely provided the option of pursuing equitable remedies would be unenforceable. See J. Calamari & J. Perillo, The Law of Contracts § 14-33, at 645 (3d ed. 1987); Comment, Liquidated Damages: A Comparison of the Common Law and the Uniform Commercial Code, 45 Fordham L.Rev. 1349, 1371-75 (1977).