2016 COA 11. No. 14CA2401. Ravenstar LLC v. One Ski Hill Place LLC.
 

  

 
 
 COLORADO COURT OF APPEALS
 2016 COA 11

 
 

 Court of Appeals No. 14CA2401
Summit County District Court No. 12CV290
Honorable Karen A. Romeo, Judge

 Ravenstar LLC, a Colorado limited liability company; The Chips LLC, a Colorado limited liability company; Let-R-Buck LLC, a Colorado limited liability company; A Rockin Place to Ski LLC d/b/a One Rockin Place to Ski LLC, a Colorado limited liability company; and Rockin OSHP LLC, a Colorado limited liability company,
 Plaintiffs-Appellants,
 v.
 One Ski Hill Place LLC, a Colorado limited liability company,
 Defendant-Appellee.

 JUDGMENT AND ORDERS AFFIRMED
 Division V
Opinion by JUDGE RICHMAN
Hawthorne and Furman, JJ., concur
 Announced January 28, 2016

 Buxman Kwitek, P.C., Linda McMillan, Pueblo, Colorado; Glover Law Office, LLC, Douglas A. Glover, Parker, Colorado, for Plaintiffs-Appellants
 Brownstein Hyatt Farber Schreck, LLP, Jonathan G. Pray, Kerry LeMonte, Denver, Colorado, for Defendant-Appellee

 
¶ 1       Plaintiffs, Ravenstar LLC, The Chips LLC, Let-R-Buck LLC, A Rockin Place to Ski LLC d/b/a One Rockin Place to Ski LLC, and Rockin OSHP LLC, appeal the district court’s orders entering judgment against them on their breach of contract claim and awarding attorney fees and costs to defendant, One Ski Hill Place LLC (OSHP). We affirm.

 I. Background and Procedural History
 ¶ 2       Plaintiffs are five Colorado companies that entered into separate contracts to purchase to-be-built condominium units from developer OSHP in early 2008. Plaintiffs paid earnest money and construction deposits of fifteen percent of the purchase price for each unit. They were unable to obtain financing for the full purchase prices and failed to close on the units by the 2010 deadline.
 ¶ 3       The contracts contained identical provisions governing default. Upon default by the purchaser, the contracts gave OSHP the option to retain “all or a portion” of the deposits as liquidated damages or, alternatively, to seek an award of actual damages and apply the deposits toward that award:
 If Purchaser defaults in the performance of any obligation under this Agreement, . . . Seller shall have the right to terminate this Agreement and shall be entitled to retain all or a portion of the Earnest Money and Construction Deposit not to exceed 15% of the Purchase Price (exclusive of interest) as liquidated damages (“Seller’s Liquidated Damages”). Alternatively and in lieu of Seller’s Liquidated Damages, Seller may elect to terminate this Agreement and recover its actual damages resulting from Purchaser’s default calculated in accordance with Colorado law, in which case Seller may seek an award of such actual damages and may retain an amount equal to the Earnest Money and Construction Deposit and apply such funds toward satisfaction of any such award. If Seller elects to seek actual damages, Seller must provide Purchaser with written notice of such election within 30 days after the end of Purchaser’s cure period, and if Seller fails to provide such notice, then Seller will only be entitled to Seller’s Liquidated Damages.

 ¶ 4        When plaintiffs defaulted, OSHP opted to retain the full deposits as liquidated damages. Plaintiffs then filed this action against OSHP, seeking the return of their deposits.
 ¶ 5        Plaintiffs asserted three claims against OSHP in their original complaint: (1) breach of contract; (2) “improper retention of earnest money”; and (3) misrepresentation. As litigation progressed, the parties asserted a number of additional claims and counterclaims, including claims against other defendants who are not parties to this appeal. Eventually, all of the claims in this case were either dismissed by stipulation of the parties or resolved against plaintiffs on summary judgment. In this appeal, plaintiffs challenge only the disposition of their breach of contract claim and the award of attorney fees and costs to OSHP.

 ¶ 6       As relevant here, plaintiffs contended, in response to OSHP’s motion for summary judgment, that the liquidated damages provision in their contracts was unenforceable. They argued that there was no mutual intent to liquidate damages, as required under Colorado law, because the provision gave OSHP the option to elect between liquidated and actual damages. The court rejected this argument in a written order but denied summary judgment to OSHP because the court could not determine on the record before it whether the amount of liquidated damages was reasonable and whether actual damages would have been difficult to ascertain, both requirements of an enforceable liquidated damages provision.
 ¶ 7       Subsequently, the court denied plaintiffs’ motion for summary judgment, again rejecting their argument that the contractual provision preserving the right to pursue the alternative remedy of actual damages rendered the liquidated damages provision unenforceable.

 ¶ 8        Separately, on August 11, 2014, the parties had entered into a joint stipulation and filed a motion to dismiss many of their other claims, which the court granted. The stipulation provided that each party would pay its own attorney fees and costs related to those dismissed claims.
 ¶ 9        On October 27, 2014, the parties filed a second joint stipulation and motion for entry of final judgment. Plaintiffs stipulated that the amount of liquidated damages set forth in the contracts was reasonable and actual damages were difficult to ascertain, thereby resolving the remaining disputed issues for the breach of contract claim. They requested an entry of judgment to permit them to appeal the court’s earlier ruling that the provision allowing OSHP to elect between liquidated damages and actual damages was enforceable. The parties also stipulated to the dismissal of their remaining claims and counterclaims. This stipulation did not address attorney fees.
 ¶ 10Thereafter, the district court granted the parties’ stipulation for entry of final judgment, entered judgment against plaintiffs on the breach of contract claim, and dismissed all remaining claims in this case. It then awarded costs and attorney fees to OSHP for all claims that were not resolved by the August 11 stipulation.

 ¶ 11      On appeal, plaintiffs contend that (1) the liquidated damages clause is unenforceable; (2) OSHP is now barred from seeking actual damages because it did not give notice within the time limit stated in the contract; and (3) the award of attorney fees and costs violated the parties’ August 11 stipulation.
 II. Liquidated Damages Clause
 ¶ 12Plaintiffs contend that the liquidated damages provision in their contracts is invalid as a matter of law because it gave OSHP the option to choose between liquidated damages and actual damages. As a matter of first impression in Colorado, we conclude that the mere presence of an option to elect between liquidated damages and actual damages does not render the liquidated damages clause unenforceable.
 A. Standard of Review
 ¶ 13The district court ruled on this issue in the context of cross-motions for summary judgment. We review a district court’s ruling on a motion for summary judgment de novo. Gibbons v. Ludlow, 2013 CO 49, ¶ 11. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

 ¶ 14      Here, the material facts are undisputed, and plaintiffs’ contention regarding the enforceability of the liquidated damages provision presents a question of law that we review de novo. See Saturn Sys., Inc. v. Militare, 252 P.3d 516, 525-26 (Colo. App. 2011).
 B. Applicable Law
 ¶ 15In Colorado, a liquidated damages provision is valid and enforceable if three elements are met: (1) the parties intended to liquidate damages; (2) when the contract was made, the amount of liquidated damages was a reasonable estimate of presumed actual damages; and (3) at the time of contract, it was difficult to ascertain the amount of actual damages that would result from a breach. Klinger v. Adams Cty. Sch. Dist. No. 50, 130 P.3d 1027, 1034 (Colo. 2006).
 ¶ 16As noted, the parties stipulated that the second and third elements were met — that the amount of liquidated damages was “reasonable under the prevailing circumstances” and at the time of contracting the amount of damages that would result from a breach was difficult to ascertain. Thus, the only the element contested here is the parties’ intent to liquidate damages.

 ¶ 17      Relying partly on Perino v. Jarvis, 135 Colo. 393, 312 P.2d 108 (1957), as well as on cases from other states, plaintiffs argue that the presence of an option to choose actual damages negates the required element of intent to liquidate damages and renders the provision invalid as a matter of law. OSHP responds that Colorado is among the states that allow optional liquidated damages provisions. We first examine the Colorado cases and then turn to authority from other jurisdictions.
 1. Colorado Cases
 ¶ 18      Contrary to plaintiffs’ position, Perino does not determine, or even address, the issue raised in this case. Although Perino generally sets forth the elements of an enforceable liquidated damages clause, the contract at issue there did not contain “any provision or understanding” for the retention of the deposit as liquidated damages. Id. at 394, 312 P.2d at 108.
 ¶ 19OSHP relies on two Colorado cases for the proposition that a seller may elect between liquidated damages and actual damages. 

 ¶ 20In Cullen v. Park Club Land Co., the Colorado Supreme Court interpreted a real estate agreement that allowed the buyer to pay in installments. 67 Colo. 210, 211-12, 184 P. 303, 304 (1919). The agreement provided that if the buyer defaulted, the seller could retain all payments made as liquidated damages. Id. at 212, 184 P. at 304. The court held that this provision merely gave the seller an “option” to declare the contract forfeited, and the seller could choose instead to affirm the contract and sue for the unpaid purchase price. Id. at 213, 184 P. at 304.
 ¶ 21      Steinhoff v. Fisch also involved an installment land sale contract. 847 P.2d 191, 192 (Colo. App. 1992). The contract provided that upon default, the seller “may retain all moneys paid by the [buyer] as liquidated damages.” Id. (alteration in original). When the buyer defaulted, the seller instead sued to recover the balance of the purchase price due under the contract. Id. A division of this court held that the liquidated damages provision was a “permissive remedy and does not bar an action seeking other remedies.” Id. at 193-94.
 ¶ 22We are not persuaded that these cases definitively decide the issue presented in this appeal. As an initial matter, the remedy sought by the sellers in those cases — the balance of the purchase price under the contract — can be viewed as being in the nature of specific performance rather than actual damages. Moreover, neither case involved a provision like the one at issue here, which explicitly gave the seller an option to choose between liquidated and actual damages. Thus, these cases are not dispositive of plaintiffs’ argument that the presence of an option negates the intent to liquidate damages and renders the provision invalid as a matter of law.

 ¶ 23Accordingly, we examine cases from other states that have addressed this issue.
 2. Cases from Other States
 ¶ 24Decisions from other jurisdictions are split on whether optional liquidated damages provisions are enforceable. See 24 Richard A. Lord, Williston on Contracts § 65:32 (4th ed. 2002) (discussing the split of authority).
 ¶ 25Courts in some states have held that the presence of an option to choose between liquidated damages and actual damages renders a liquidated damages provision unenforceable. See, e.g., Lefemine v. Baron, 573 So. 2d 326, 329-30 (Fla. 1991); Grossinger Motorcorp, Inc. v. Am. Nat’l Bank & Tr. Co., 607 N.E.2d 1337, 1346 (Ill. App. Ct. 1992).

 ¶ 26In Lefemine, the Florida Supreme Court held that such an option “indicates an intent to penalize the defaulting buyer and negates the intent to liquidate damages in the event of a breach.” 573 So. 2d at 329. The court explained:
 The buyer under a liquidated damages provision with such an option is always at risk for damages greater than the liquidated sum. On the other hand, if the actual damages are less than the liquidated sum, the buyer is nevertheless obligated by the liquidated damages clause because the seller will take the deposit under that clause. Because neither party intends the stipulated sum to be the agreed-upon measure of damages, the provision cannot be a valid liquidated damages clause.
 Id. at 329-30.
 ¶ 27      Similarly, Grossinger held that “[o]n its face, the optional nature of the liquidated damages clause shows that the parties never intended to establish a specific sum to constitute damages in the event of a breach.” 607 N.E.2d at 1346. The Appellate Court of Illinois stated that such an option permits the seller to “have his cake and eat it too.” Id. at 1347 (quoting Dalston Constr. Corp. v. Wallace, 214 N.Y.S.2d 191, 193 (N.Y. Dist. Ct. 1960)); see also John D. Calamari & Joseph M. Perillo, The Law of Contracts § 14-32, at 645 (3d ed. 1987) (describing the “Have Cake and Eat It Clause” as unenforceable).

 ¶ 28Courts following this rule have struck the optional liquidated damages clause and allowed sellers to recover only actual damages resulting from the breach.[1]See, e.g., Lefemine, 573 So. 2d at 329; Grossinger, 607 N.E.2d at 1347. The seller in Grossinger conceded that it had not incurred any actual damages, and the court therefore required it to return the buyer’s deposit in full. 607 N.E.2d at 1347.
 ¶ 29Courts in other states, however, have upheld provisions that allowed sellers to choose between liquidated and actual damages. See, e.g., Royer v. Carter, 233 P.2d 539, 541 (Cal. 1951); Margaret H. Wayne Tr. v. Lipsky, 846 P.2d 904, 908-09 (Idaho 1993); Noble v. Ogborn, 717 P.2d 285, 287 (Wash. Ct. App. 1986). These courts “have treated the issue as one to be determined by the parties in their agreement, . . . merely noting that a party who opts to proceed under a valid liquidated damages provision may not in addition pursue other rights.” 24 Lord at § 65:32; see also Dan B. Dobbs, Handbook on the Law of Remedies § 12.11, at 855-56 (1973) (“The presence of a liquidated damages provision does not automatically prevent the vendor from claiming his actual damages, and in the absence of any indication to the contrary, it probably should be assumed that the vendor is free to claim liquidated or actual damages, as his option.”).

 C. Analysis
 ¶ 30Here, it is undisputed that the parties agreed in the contract to allow OSHP the option to retain the deposits as liquidated damages or to seek actual damages. When plaintiffs breached, OSHP elected to retain the deposits as liquidated damages, pursuant to the parties’ agreed-upon terms. Plaintiffs have stipulated that the amount of liquidated damages was reasonable. 

 ¶ 31Under these circumstances, we conclude that the mere presence of an option to seek actual damages does not render the otherwise-valid liquidated damages provision unenforceable.
 ¶ 32We are not persuaded by the reasoning of the cases holding such options unenforceable. Those decisions assumed that an optional liquidated damages provision would be exercised only when the liquidated amount exceeds the actual damages resulting from the breach, thereby “indicat[ing] an intent to penalize the defaulting buyer.” Lefemine, 573 So. 2d at 329. We reject that premise. The seller may instead choose liquidated damages because actual damages are difficult to ascertain or prove, or simply to avoid the uncertainty and expense of litigation. See Restatement (Second) of Contracts § 356 cmt. a (1981) (“The enforcement of . . . provisions for liquidated damages saves the time of courts, juries, parties and witnesses and reduces the expense of litigation.”). Thus, we disagree that the option operates as a penalty in all instances.
 ¶ 33Nor can we say that liquidated damages operated as a penalty under the facts of this case. Unlike the seller in Grossinger, OSHP has not conceded that the amount of liquidated damages exceeded the actual damages suffered, and plaintiffs presented no evidence to that effect. To the contrary, plaintiffs stipulated that the amount of liquidated damages was reasonable under the circumstances. To the extent that Grossinger considered the absence of actual damages in concluding that the liquidated damages provision was unenforceable, this case does not present the same fairness concern.

 ¶ 34We also disagree that the presence of an option negates the parties’ intent to liquidate damages in advance. The parties in this case expressly intended to make liquidated damages one of the available remedies that OSHP could pursue. We are unaware of any Colorado authority requiring the parties to intend that liquidated damages be their sole and exclusive remedy.[2] To the contrary, Colorado cases have recognized that liquidated damages may be one among several alternative remedies. Cullen, 67 Colo. at 213, 184 P. at 304; Steinhoff, 847 P.2d at 193-94.

 ¶ 35Finally, we disagree that an optional liquidated damages clause allows the seller to “have his cake and eat it too.”[3]Grossinger, 607 N.E.2d at 1347 (citation omitted). The rationale that optional remedy provisions are problematic because they allow the seller to “have his cake and eat it too” appears to originate with Dalston, 214 N.Y.S.2d at 193. In that case, however, the court interpreted the contract provision to “leave the door wide open to [the contractor] to prove actual damage in addition to the so-called liquidated damage.” Id. The court stated that “[t]his is no settlement at all and it permits the contractor to have his cake and eat it too.” Id. That provision is distinguishable from the provision in this case, which required the seller to choose between liquidated damages and actual damages as alternative remedies. OSHP may not obtain a double recovery under the optional provision in this case, but is limited to either accepting liquidated damages or proving actual damages. See 24 Lord at § 65:32.

 ¶ 36Moreover, the “cake and eat it too” rationale as argued by plaintiffs could apply equally to an option to choose between liquidated damages and any other remedy, not just actual damages. However, Colorado precedent makes clear that a liquidated damages provision does not prevent a party from pursuing alternative remedies. Cullen, 67 Colo. at 213, 184 P. at 304; Steinhoff, 847 P.2d at 193-94. We perceive no reason why a party should be prevented from doing so merely because the alternative remedy sought is actual damages.
 ¶ 37For these reasons, we conclude that the mere presence of an option to seek actual damages does not render the liquidated damages provision in this case invalid as a matter of law.
 ¶ 38Accordingly, we need not address whether OSHP would be entitled to claim actual damages if the liquidated damages provision were held unenforceable. OSHP properly retained plaintiffs’ full deposits under the liquidated damages provision in the contracts. We therefore affirm the court’s entry of judgment against plaintiffs on their breach of contract claim.

 III. Attorney Fees and Costs
 ¶ 39      Plaintiffs next challenge the district court’s award of attorney fees and costs to OSHP. They contend that (1) the award included fees and costs that were precluded by the parties’ stipulation of August 11, 2014; (2) OSHP’s attorneys engaged in block billing that made it impossible to separate out the prohibited fees; (3) OSHP presented insufficient evidence that several of its attorneys were in-house counsel; and (4) the court’s orders did not adequately address or make findings regarding these arguments.[4] We reject each of these contentions and therefore affirm the award of fees and costs.
 A. Standard of Review

 ¶ 40We review the reasonableness of the court’s award of attorney fees and costs for an abuse of discretion. Crandall v. City & Cty. of Denver, 238 P.3d 659, 661 (Colo. 2010). A district court abuses its discretion if the award is manifestly arbitrary, unreasonable, or unfair. Planning Partners Int’l, LLC v. QED, Inc., 2013 CO 43, ¶ 12. The determination of reasonableness of attorney fees is a question of fact for the district court, and its ruling will not be disturbed on review unless patently erroneous and unsupported by the evidence. Payan v. Nash Finch Co., 2012 COA 135, ¶ 16.
 ¶ 41      We interpret the terms of the parties’ stipulation de novo. Town of Minturn v. Tucker, 2013 CO 3, ¶ 45. We construe the stipulation according to ordinary contract principles, looking first to its plain language to determine the parties’ intent. Id. at ¶ 40.
 B. District Court Proceedings
 ¶ 42      Plaintiffs’ purchase contracts contained identical provisions stating that the prevailing party in an action to enforce or interpret the contract would be entitled to recover “all reasonable attorneys’ fees and costs.”

 ¶ 43As noted above, plaintiffs originally filed claims against OSHP for breach of contract, “improper retention of earnest money,” and misrepresentation. Plaintiffs later added Vail Resorts, Inc., as a defendant and filed eight additional claims against OSHP and Vail Resorts under the Federal Interstate Land Sales Act (ILSA), 15 U.S.C. §§ 1701-1720 (2012). OSHP and Vail Resorts were represented by the same counsel in this litigation. OSHP filed two counterclaims against plaintiffs and a third-party claim seeking to pierce the corporate veil against plaintiffs’ principals and managers.
 ¶ 44The parties’ August 11 stipulation requested dismissal of:

 all claims against defendant Vail Resorts;
 plaintiffs’ misrepresentation claim;
 three of plaintiffs’ ILSA claims;
 defendant OSHP’s veil-piercing claim; and
 all claims involving third-party defendants.

 Each party agreed to pay its own attorney fees and costs related to those claims.
 ¶ 45After the court entered the order of final judgment, OSHP moved for an award of attorney fees and costs related to the claims not covered by the August 11 stipulation. OSHP provided billing statements showing the work performed by in-house counsel and outside attorneys. It also submitted an affidavit by its lead in-house counsel describing each attorney’s billing rate.
 ¶ 46Plaintiffs objected to OSHP’s requests, asserting the same arguments now raised on appeal. OSHP then submitted an amended bill of costs and request for fees with some additional deductions.
 ¶ 47The district court entered written orders awarding costs and fees to OSHP in the amounts requested. The court found that OSHP was the prevailing party and was entitled to costs and fees under the terms of the contract. The court also found that the requested costs and fees were reasonable and related only to the claims on which OSHP prevailed.
 C. Analysis
 1. Claims Covered by August 11 Stipulation
 ¶ 48We conclude that the court did not improperly award fees and costs excluded by the parties’ August 11 stipulation.
 ¶ 49The Colorado Supreme Court has discussed with approval the approach set forth in Hensley v. Eckerhart, 461 U.S. 424 (1983), for determining an appropriate fee award where a party is entitled to attorney fees for some claims but not others. Rocky Mountain Festivals, Inc. v. Parsons Corp., 242 P.3d 1067, 1073 (Colo. 2010).
 The [Supreme] Court [in Hensley] determined that, where a plaintiff had brought multiple claims “involv[ing] a common core of facts” or “based on related legal theories,” counsel’s efforts on an individual claim could not be distinguished from work on the whole of the litigation, and thus a reduction in the fee award for work done on unsuccessful claims would be inappropriate. On the other hand, where the plaintiff presented “distinctly different claims for relief that [were] based on different facts and legal theories,” the litigation could be justly conceived as a “series of discrete claims” that had been “raised in separate lawsuits,” and so a fee award that contemplated only those claims on which the plaintiff had succeeded was both practicable and necessary to [e]ffect the purpose of the fee-shifting statute.

 Id. (citation omitted) (quoting Hensley, 461 U.S. at 434-35).
 ¶ 50Relying on this framework from Hensley, the district court found that “OSHP has sufficiently separated out any attorney fees that relate to dismissed claims per the stipulation reached August 11, 2014, or that are attributable to Vail Resorts, Inc.”
 ¶ 51Plaintiffs argue that this finding was erroneous because OSHP’s billing statements on their face show charges related to claims covered by the August 11 stipulation. In their opening brief, they specifically highlight billing for OSHP’s motion to dismiss and motion for summary judgment on plaintiffs’ ILSA claims.

 ¶ 52      As an initial matter, we reject plaintiffs’ contention that the August 11 stipulation precludes recovery of attorney fees for all eight ILSA claims. The plain language of the stipulation states that plaintiffs agreed to dismiss only their second, fourth, and eighth claims under ILSA. It does not address their remaining five ILSA claims. Indeed, the parties’ subsequent October 27 stipulation states that it will “resolve the remaining Counterclaims and ILSA Claims.” Thus, we reject plaintiffs’ argument that all ILSA claims should have been excluded from the fee award.
 ¶ 53      Contrary to plaintiffs’ contention, the record does not reveal any instance where OSHP requested fees specifically attributable to claims covered by the August 11 stipulation. Tasks related to those claims are crossed out in the billing statements and not included in the fee award.
 ¶ 54OSHP did request fees for some tasks — such as the ILSA motions — that related to multiple claims, only some of which were covered by the August 11 stipulation. However, plaintiffs do not allege that those claims were “based on different facts and legal theories” such that counsel’s work on them could be separated out under the Hensley framework. 461 U.S. at 434. In its motion to dismiss the ILSA claims, for example, OSHP did not present separate arguments for each claim, but instead asserted grounds for dismissal that applied equally to all eight claims. Under these circumstances, we cannot say that the district court abused its discretion in awarding attorney fees for tasks that related to multiple claims.
 ¶ 55Given the district court’s superior understanding of the course of the litigation and the claims involved, we defer to the district court’s findings that OSHP “sufficiently separated out” attorney fees related to claims covered by the August 11 stipulation. See Payan, ¶ 37.
 2. Block Billing
 ¶ 56Plaintiffs next argue that OSHP’s attorneys engaged in “block billing” that prevented the court from separating out the unrecoverable fees. Although we agree that the billing statements included block billing, we conclude that they contained sufficient information to support the court’s award of fees.

 ¶ 57“Block billing is a form of time-keeping that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities.” Payan, ¶ 29 (citation omitted). Block billing does not preclude a fee award, but a district court retains discretion to reduce hours billed in that format if the court is unable to determine whether the amount of time spent on various tasks was reasonable. Id.
 ¶ 58Some of OSHP’s billing entries provided only the total amount of time spent on each date and listed various tasks performed during that block of time. However, in their request for fees, OSHP crossed out tasks related to the settled claims and listed a specific amount of time to be deducted next to each entry.
 ¶ 59On this record, we conclude that the district court did not abuse its discretion in finding that those deductions were reasonable and sufficiently excluded attorney fees for claims covered by the August 11 stipulation.
 3. In-House Counsel Fees
 ¶ 60We also reject plaintiffs’ contention that the court erred in awarding attorney fees for OSHP’s in-house counsel based on the lodestar method. Plaintiffs allege that OSHP’s “in-house” attorneys were actually employed by OSHP’s parent company. They argue that OSHP was therefore required to provide a fee agreement pursuant to C.R.C.P. 121, section 1-22(2)(b) and could only receive fees for the exact amount billed under that agreement. We perceive no error.

 ¶ 61The lodestar method provides an initial estimate of a reasonable attorney fee, whether the attorney is salaried or charges fees under a fee agreement. See Balkind v. Telluride Mountain Title Co., 8 P.3d 581, 587-88 (Colo. App. 2000). It is based on the number of hours reasonably expended multiplied by a reasonable hourly rate. Id. Where a fee agreement exists, it is merely a factor to be considered in determining reasonableness. Tallitsch v. Child Support Servs., Inc., 926 P.2d 143, 147 (Colo. App. 1996) (A fee agreement “does not, of itself, require a court to award the amount agreed upon between the attorney and client.”).
 ¶ 62    Section 1-22 of C.R.C.P. 121 addresses motions for costs and attorney fees. It states that “[t]he motion shall be accompanied by any supporting documentation, including materials evidencing the attorney’s time spent, the fee agreement between the attorney and client, and the reasonableness of the fees.” C.R.C.P. 121, § 1­22(2)(b).
 ¶ 63OSHP submitted an affidavit from its lead counsel stating that OSHP “utilized salaried in-house attorneys and staff assigned by its parent company The Vail Corporation, d/b/a Vail Resorts Management Company, to represent and perform work on behalf of OSHP in this action. Such in-house attorneys and staff were Annie Kao, Marc Bonora, and Dana Hills.”
 ¶ 64This evidence was sufficient to establish that the requested fees related to work performed by in-house counsel and staff. Plaintiffs have not cited any authority to support their contention that OSHP may not seek fees for these in-house attorneys merely because they were assigned by its parent company.
 ¶ 65Because these employees were salaried, OSHP was not required to submit a fee agreement under C.R.C.P. 121, section 1­22(2)(b). OSHP provided other documentation to support an award of fees based on the lodestar method, including timesheets and information about each person’s level of experience.

 ¶ 66Therefore, we conclude that the court did not abuse its discretion in awarding fees for OSHP’s in-house counsel based on the lodestar method.
 4. Adequacy of Findings
 ¶ 67      Finally, we reject plaintiffs’ contention that the court failed to adequately address their arguments or make sufficient findings of fact. As set forth above, the court specifically found that the requested fees and costs were reasonable and excluded those fees and costs prohibited by the August 11 stipulation. The court stated that it relied on the affidavit from OSHP’s lead counsel and OSHP’s detailed billing statements in making these findings. Thus, the court’s order adequately explained the basis for the award and made sufficient findings to permit appellate review.
 IV. Conclusion
 ¶ 68The judgment and orders are affirmed.
 JUDGE HAWTHORNE and JUDGE FURMAN concur.

 [1] Some courts note that an optional liquidated damages clause is enforceable if the other remedies are nonmonetary or equitable. Grossinger Motorcorp, Inc. v. Am. Nat’l Bank & Tr. Co., 607 N.E.2d 1337, 1346 (Ill. App. Ct. 1992); see also Lefemine v. Baron, 573 So. 2d 326, 330 n.5 (Fla. 1991) (The decision does not “imply that a liquidated damages clause which merely provided the option of pursuing equitable remedies would be unenforceable.”).
 [2] The Colorado cases relied on by plaintiffs merely recite the same three elements set forth in Klinger v. Adams County School District Number 50, 130 P.3d 1027 (Colo. 2006), for enforceability of a liquidated damages provision, including intent to liquidate damages. See Perino v. Jarvis, 135 Colo. 393, 396, 312 P.2d 108, 109 (1957); Yerton v. Bowden, 762 P.2d 786, 788 (Colo. App. 1988); Oldis v. Grosse-Rhode, 35 Colo. App. 46, 51, 528 P.2d 944, 947 (1974); Moore v. Kline, 26 Colo. App. 334, 338, 143 P. 262, 264 (1914). They do not establish any additional requirements regarding the parties’ intent.
 [3] We note this aphorism is literally meaningless because one can have one’s cake and eat it. An earlier, and probably correct form of the aphorism was: “A man cannot eat his cake and ha[v]e it stil[l].” Ben Zimmer, Have Your Cake and Eat It Too, N.Y. Times Magazine, Feb. 18, 2011, http://perma.cc/QT3S-9AS2. The point of the aphorism, which appears in many languages, is that one must make a choice between two options. For example, expressed in Yiddish, the saying goes: “You can’t dance at two weddings with one tuchis.” Id. Or in Hebrew: ???? ???? ??????? ????? ?? ????? ???? ?? . Meaning: It is impossible to eat one’s cake and have it remain complete. Applied in the context of this legal issue, we agree that the seller cannot both retain the liquidated damages and sue for actual damages. But as noted above, that is not the issue in this case.
 [4] Plaintiffs do not contest OSHP’s right to recover reasonable fees and costs as the prevailing party, nor do they contest the reasonableness of the hourly rates charged by OSHP’s counsel.
 
These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here.