DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

BRIDGETTE SHAW,

Appellant,

v.

ZARA NEWHAM,

Appellee.

No. 2D22-3300

_____

December 20, 2023

Appeal from the County Court for Pinellas County; Lorraine M. Kelly,
Judge.

Jeremy D. Bailie and Kyle D. Bass of Weber, Crabb & Wein, P.A., St.
Petersburg, for Appellant.

Alexander T. Lewis of Lewis & Castagliola, P.A., St. Petersburg, for
Appellee.


KELLY, Judge.

Bridgette Shaw (the buyer) appeals from the county court's order
finding that she breached a contract to purchase the assets of a hair
salon from Zara Newham (the seller) and awarding the seller the entire
contract price as damages.  We reverse on the issue of damages.

The seller owned a hair salon in a leased space. The buyer contracted with the seller to purchase the "business assets" of the hair salon, which included the salon's name, telephone number, website, email address, advertising materials, all customer accounts and records, documents related to suppliers and vendors, and the furniture, fixtures, and equipment referenced in "Schedule A."[1] The contract terms required the seller to maintain the business until closing on or before July 1, 2020, and then to assign the lease to the buyer. The seller also agreed to remain on the premises for two weeks after closing to help the business transition. The buyer paid a $3,000 deposit that was to be applied toward the $10,000 purchase price.[2] The contract allowed the buyer twenty days to conduct her due diligence beginning on June 2, 2020. During that twenty-day period, the buyer could cancel the contract and have her deposit returned if the business was "not to the Buyer's sole, complete and personal satisfaction." The closing was originally set for June 30, 2020, but it was postponed twice to accommodate the buyer's move from out of state. It was ultimately scheduled for July 15, 2020. Because the closing was delayed, the parties decided that the buyer should take over the lease obligation at the end of June. The seller terminated her lease, and the buyer obtained a new lease directly from the landlord, commencing July 1. At trial, the buyer claimed it was the seller's idea to execute this plan because the seller did not want to pay rent for the month of July. In contrast, the seller claimed that it was a mutual decision among the parties and the landlord.

---

[1] Although the contract states that Schedule A was attached to the contract, such attachment does not appear in the record.

[2] The contract provides that the total purchase price was $18,000, $8,000 of which was the broker's fee.

Four days before the closing date, and outside the due diligence period, the buyer gave notice that she was not going through with the purchase. She claimed that the seller refused to give her any of the business's financial information for her due diligence investigation and had threatened not to give up her client list or the business's phone number after the sale. The seller left the premises approximately two weeks after being informed of the canceled sale and took all the fixtures and furniture with her, leaving the space completely bare. Consequently, the buyer filed suit against the seller for, inter alia, unlawful detainer of the premises and conversion. The seller counterclaimed, seeking damages for the buyer's breach of contract for failing to close on the contract.

Following a bench trial, the county court rendered judgment in favor of the seller on all claims. The court rejected the buyer's claim for unlawful detainer, finding that the contract required the seller to maintain the business until closing and permitted her to stay on the premises for two weeks afterward to aid in the transition. On the buyer's conversion count, the court found that the buyer was not entitled to the fixtures because she did not purchase the salon. As to the seller's counterclaim for breach of contract, the court found that the buyer breached the contract when "she did not show up for the closing and pay for the salon." The court determined that the seller was entitled to the entire contract price to put her in the position she would have been in had the buyer not breached. On this point, the court stated, "I think what shapes the Court's view on these things is that as counsel for [the seller] accurately argued, [the buyer] basically enjoys the benefit of the deal that they had without ever having to pay a single penny." The court rendered judgment in favor of the seller for $10,000.

The buyer argues that the county court erred in awarding the seller more than the amount pled or permitted by the terms of the contract. She points to the provisions in the contract that state, as follows:

11.1  DEFAULT BY BUYER:

11.1.1  If Buyer fails to pay the balance of any cash necessary to close this transaction, or if the Buyer fails to perform any of the covenants and conditions of this Contract, the Seller shall have the right to enforce this Contract pursuant to the Contract terms.

11.1.2  In the alternative, and at the option of the Seller, the Seller may retain all sums paid by Buyer as liquidated damages.

The buyer contends that the plain language of the contract provides the seller only two options in the event of the buyer's breach: (1) sue for specific performance or (2) collect as liquidated damages the buyer's $3,000 deposit. Instead, the court awarded to the seller the entire purchase price and allowed the seller to keep the salon's trade name, phone number, client list, business records, and fixtures. The buyer contends that this was error because the contract did not give the seller the option of obtaining a money judgment in the event of the buyer's breach.

The seller argues that because the contract allows for the election of liquidated damages or money damages, it is unenforceable under *Lefemine v. Baron*, 573 So. 2d 326, 327-28 (Fla. 1991). In *Lefemine*, the supreme court held that the default provision in a contract was not enforceable as a liquidated damages clause as a matter of law if there was an option to sue for damages or to retain a deposit. 573 So. 2d at 330. The supreme court explained that the ability of the seller to refuse to be limited to the deposit paid by the buyer as a liquidated amount,

4

and to sue for damages, destroyed the character of the agreement on damages and became a penalty. *Id.* at 328-29.

In this case, the seller's argument is flawed because, unlike the contract in *Lefemine*, the contract at issue does not provide for a remedy to the seller to sue for actual damages. Rather, the seller is only contractually permitted to sue for specific performance or to retain the buyer's deposit. *See Mineo v. Lakeside Vill. of Davie, LLC*, 983 So. 2d 20, 22 (Fla. 4th DCA 2008) (holding that a default clause that allows the nondefaulting party to retain the deposit as liquidated damages or sue for specific performance is enforceable because the damages have been agreed upon in advance; the seller can seek specific performance at a purchase price that is certain or accept the buyer's deposit as stipulated damages).

The seller also contends that she was entitled to the full contract price because the buyer received the benefit of the bargain by obtaining the lease, despite reneging on the sale. As the buyer points out, the seller's own trial testimony undermines her claim. In response to questioning about the whereabouts of the assets described in the contract, the seller admitted, "I have everything in my possession." In fact, the only item that the seller relinquished was the lease—which she willingly terminated prior to the closing date.

We agree with the buyer's contention that the court erred in awarding the seller a money judgment for the full contract price. *See Waters v. Key Colony E., Inc.*, 345 So. 2d 367, 367 (Fla. 3d DCA 1977) ("A party to a contract, who agrees to accept a sum as liquidated damages, cannot sue for actual damages."). The contract provides that the seller either could seek specific performance and require the buyer to pay $10,000 for the salon's assets *or* she could retain the buyer's deposit as

5

liquidated damages and keep the business's assets. By receiving the full contract price in the final judgment, the seller received a windfall; she continues to own the salon's trade name and other assets, *and* she received $10,000 in damages—in spite of the fact that *she put herself* in an unfortunate position by relinquishing the lease before selling her business. *See, e.g., Koplowitz v. Girard*, 658 So. 2d 1183, 1184 (Fla. 4th DCA 1995) ("A party can neither receive more than it bargained for nor should it be put in a better position than it would have been in had the contract been properly performed."). In contrast, the buyer received an empty space and a judgment requiring her to pay the full contract price, a result that was not authorized by the contract.

Accordingly, we affirm the county court's rejection of the buyer's claims against the seller without comment. We also affirm the court's ruling on the seller's counterclaim that the buyer breached the contract by canceling the contract outside the due diligence period. However, because the court's judgment awards damages in excess of what the contract allows, we reverse the award of $10,000 to the seller and remand for entry of a judgment in the amount of $3,000.

Affirmed in part, reversed in part, and remanded with directions.

ROTHSTEIN-YOUAKIM and ATKINSON, JJ., Concur.

————————————————

Opinion subject to revision prior to official publication.