**B.B. & C. Partnership, Petitioner,**

v.

**The EDELWEISS CONDOMINIUM ASSOCIATION, Respondent.**

**No. 08SC384.**

Supreme Court of Colorado,
En Banc.

Oct. 13, 2009.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, Victor M. Morales, C. Adam Foster, Denver, Colorado, Attorneys for Petitioner.

Lansky, Weigler & Porter, P.C., Wendy E. Weigler, Denver, Colorado, Attorney for Respondent.

Justice HOBBS delivered the Opinion of the Court.

In this quiet title adverse possession case, we review and affirm a judgment of the court of appeals.[1] B.B. & C. Partnership ("BB&C") obtained a summary judgment in the trial court quieting its title to the property identified as parking space 21 of the Edelweiss Condominiums ("Edelweiss") located in Vail, Colorado. Relying on the color of title adverse possession statute, section 38–41–108, C.R.S. (2009), the trial court ruled that BB&C owns an unrestricted fee simple estate in parking space 21 and may convey it free of condominium declaration restrictions applicable to other parking spaces on the property.

BB&C bases its quiet title adverse possession claim on the fact that one of its employees, Jack Curtin–Hill, who served as a managing agent of the condominium and is the sole remaining partner in BB&C, parked his vehicle in parking space 21 for over twenty years while BB&C paid all taxes, maintenance fees, and insurance fees on the space during that period. The dispute arose when BB&C sought to sell its claimed unrestricted fee simple ownership interest to a third party who is not a condominium owner.[2] The Edelweiss Condominium Association ("Association") invoked the condominium's Declaration provisions that prevent the sale of a common element parking space to a non-condominium owner.

We hold that parking space 21 is a common element of the condominium property that, under the deed of conveyance to BB&C incorporating the condominium's Declaration, cannot be sold or leased to a third party who is not a condominium owner. A plaintiff who succeeds in proving all the elements of section 38–41–108 is entitled to a judgment of legal ownership "to the extent and according to the purport of his paper title." § 38–41–108. Here, BB&C's paper title plainly incorporates a provision that contradicts BB&C's claim for title to an unrestricted fee simple estate in parking space 21 that it can freely convey to any third party.

The court of appeals ruled that the trial court erred in granting summary judgment to BB&C and remanded the case to the trial court for further proceedings. We agree, but for different reasons than the court of appeals expressed in its unpublished decision. The court of appeals reasoned that BB&C has no ownership interest at all in parking space 21 because the conveyance of the space to BB&C by a condominium unit owner violated the original and Amended Declarations. However, whether the conveyance to BB&C violated the original and Amended Declarations is immaterial when an invalid conveyance is nonetheless sufficient for color of title under the provisions of section 38–41–108. Accordingly, while on remand from the court of appeals BB&C may be able to obtain a quiet title judgment

---

1. The certiorari issues on review are:

    1. Whether the court of appeals erred in holding that, as a matter of law, petitioner could not adversely possess a parking space on condominium property pursuant to section 38–41–108, C.R.S. (2009) (adverse possession under color of title) where petitioner had parked a car in the space without objection for over twenty years, paid property taxes for the space for over twenty years, recorded a warranty deed assigning the space to petitioner with the Eagle County Clerk and Recorder and paid condominium dues.

    2. Whether the court of appeals erred in holding that section 38–41–108 does not, as a matter of law, apply to condominium common elements.

2. At oral argument, BB&C claimed it was entitled to sell parking space 21 for development or whatever other purpose it saw fit because BB&C owned the property in fee simple:

    Justice Hobbs: It's a parking space to normally serve the tenants of the building of course. The people who conveyed this weren't the developers.

    BB&C: And that's the wonderful part about real property Your Honor. If you own it, you own it. And if someone wants to buy it for purposes of development, they have to pay you for it. And that's certainly consistent with what my client is asking for here.

recognizing its ownership of parking space 21, it is not entitled to a judgment for an unrestricted fee simple estate.

# I.

Edelweiss is a twenty-unit complex that includes thirty parking spaces. At Edelweiss's inception, one parking space was conveyed appurtenant to each condominium, and ten spaces were unassigned. A provision of the condominium's Declaration[3] permitted the developer to sell the unassigned spaces to condominium owners or to third-party non-condominium owners. Under the Declaration, no person other than the developer can sell or lease a parking space to a non-condominium owner.

In 1971, Edelweiss condominium owner Edward Lana purchased parking space 21 from Investment Enterprises Corporation, the condominium developer and declarant. Edward Lana sold his condominium unit along with two parking spaces in 1972, but retained parking space 21 until 1974. At that time, he sold parking space 21 to Justin and Isabella Lana ("the Lanas"), who owned a condominium in the building.

The following year, the Lanas conveyed their unit along with two parking spaces to Margaret Hardy, but they retained parking space 21. In 1976, the Lanas sold parking space 21 for $1,200 to BB&C via warranty deed, which BB&C filed and recorded. This deed, like the others, specifically made the conveyance "subject to the terms, covenants, conditions, easements, restrictions, uses, limitations and obligations set forth in [the] Declaration" governing Edelweiss.

Because BB&C was a non-condominium owner and the Lanas were not the condominium developer, the conveyance of parking space 21 violated the Declaration's requirement that only the developer could sell or lease a parking space to a non-condominium owner. Nonetheless, the Association acknowledged BB&C's use and ownership of parking space 21. At the Association's annual meeting in December 1981, the condominium unit owners comprising the Association discussed parking spaces and BB&C's ownership and obligations in regard to parking space 21. The meeting's minutes note that BB&C owned a parking space in the building and "it was the consensus . . . that the sale of parking spaces, if possible, be restricted only to other owners of condominium units." A consensus was then reached that BB&C should "participate in the payment of monthly assessments." The Association also decided to notify its insurance company that BB&C owned parking space 21.[4] Subsequently, the Association assessed BB&C with a $240.00 yearly fee for the space's maintenance and insurance. Edelweiss later provided BB&C a garage door opener after modifying the parking lot to require one.

Until 1998, Curtin–Hill continued to regularly park in parking space 21. During that time he still served as managing agent of the condominium but as an employee of Arthur G. Bishop & Company. After 1998, Curtin–Hill only parked in space 21 occasionally. In 2003, BB&C, of which Curtin–Hill is the sole remaining partner, attempted to sell parking space 21 to a third-party non-condominium owner.

---

**3.** The Condominium Ownership Act, § 38–33–103(2), C.R.S. (2009), defines "Declaration" as the instrument "which defines the character, duration, rights, obligations, and limitations of condominium ownership."

**4.** Paragraph 19 of the minutes of the Twelfth Annual Meeting of the Association held on December 19, 1981, recites as follows:

Report on parking spaces: Gilda Schine reported on the sale of a parking space in the building during the past Fiscal Year. This precipitated considerable discussion and it was decided to ask Lawrence Atler to review the Declaration and By–Laws and present a report on what Mr. Atler feels the legal implications are. It was the consensus of the members attending the meeting that the sale of parking spaces, if possible, be restricted only to other owners of condominium units. Currently, there is one parking space in the building owned by B.B. & C., a partnership which is comprised of Arthur G. Bishop, William F. Bishop and Jack J. Curtin. This parking space was purchased by B.B. & C. from one of the original declarants of the Condominium Declaration, and it was also the consensus of the members attending the meeting that they felt it would be proper for B.B. & C. to participate in the payment of monthly assessments. The management company was then instructed to notify the association's insurance company about the B.B. & C. space.

The dispute between BB&C and the Association arose in 2003 when BB&C sought to replace a lost automatic garage door opener needed to access parking space 21 and the Association refused to provide it. Soon after, BB&C filed a quiet title action in Eagle County District Court, claiming fee simple ownership of parking space 21 by adverse possession under color of title pursuant to section 38–41–108, among other claims. On the color of title claim, the trial court concluded that BB&C owned parking space 21 in unrestricted fee simple and could convey it to a third-party non-condominium owner.

The original Declaration that established Edelweiss in 1970, and that governs this dispute, provides in Exhibit C that:

> One parking space shall be assigned (conveyed) by the Declarant to each initial purchaser(s) of a condominium unit. Additional parking spaces may be purchased or leased from the Declarant at such circumstantial value as determined by Declarant. Each condominium unit shall always have one parking space appurtenant thereto.... an owner of a condominium unit shall have the right to sell, lease or exchange a parking space, *but only to or with another owner, to the Association or to the Declarant;* provided, however, that all such leases shall expire on the date that such lessor's ownership interest in his condominium unit is terminated and, provided, further, that such right to sell or exchange is expressly limited to the condition that each condominium unit shall always have a minimum of one parking space appurtenant thereto. *The parking spaces which are not assigned (conveyed) to the condominium unit owners shall be owned by Declarant, who shall have the right to lease or sell the same to persons other than the condominium unit owners.*

(emphases added). Parking spaces are included within the definition of general common elements pursuant to section 1(d) of the Declaration. Further, the condominium map attached to the Declaration explicitly states that all of the parking spaces are limited common elements.

The Declaration forbids the partitioning of common elements and limits how and to whom common elements may be conveyed. Section 10 of the Declaration provides that general common elements "shall be owned in common by all of the owners of the units and shall remain undivided, and no owner shall bring any action for partition or division of the general common elements." Section 6 dictates that the undivided interest in the limited and general common elements, along with the condominium unit, "shall together comprise one condominium unit, shall be inseparable and may be conveyed, leased, devised or encumbered only as a condominium unit."

In 2003, the Association adopted an Amended Declaration to replace the original Declaration. The Amended Declaration, in the words of the trial court, "declared the Association members to be the owner of parking space 21 as a general common element," allowed for the reallocation of parking space 21 as a limited common element, and permitted Association members to use parking space 21 while permanently excluding BB&C from accessing it. The trial court declared the Amended Declaration to be unconscionable and voided it. The court of appeals upheld the Amended Declaration but awarded BB&C costs and attorneys fees for Edelweiss's belated disclosure of the Amended Declaration. This award of costs and attorneys fees is not an issue before us.

We conclude that the trial court on summary judgment, and subsequently the court of appeals, did not need to reach the issue of the Amended Declaration's applicability. The original Declaration incorporated into BB&C's deed precludes it from obtaining an unrestricted fee simple estate in parking space 21. Thus, we affirm on different grounds the court of appeals' judgment that the trial court's summary judgment order for an unrestricted fee simple estate in parking space 21 cannot stand.

## II.

We hold that parking space 21 is a common element of the condominium property that, under the deed of conveyance to BB&C incorporating the Declaration, cannot be sold

or leased to a third party who is not a condominium owner. A plaintiff who succeeds in proving all the elements of section 38–41–108 is entitled to a judgment of legal ownership "to the extent and according to the purport of his paper title." § 38–41–108. Here, BB&C's paper title plainly incorporates a provision that contradicts BB&C's claim for relief to an unrestricted fee simple estate in parking space 21 that it can freely convey to any third party.

Accordingly, while on remand from the court of appeals BB&C may be able to obtain a quiet title judgment recognizing its ownership of parking space 21, it is not entitled to a judgment for an unrestricted fee simple estate.

## A. Standard of Review

■ We review questions of law and statutory construction, including adverse possession statutes, de novo. *Matoush v. Lovingood,* 177 P.3d 1262, 1269 (Colo.2008); *Flood v. Mercantile Adjustment Bureau, LLC,* 176 P.3d 769, 772 (Colo.2008). We also review the construction of a covenant de novo. *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.,* 21 P.3d 860, 862 (Colo. 2001). The "dictates of plain English" must guide the interpretation of a restrictive covenant. *Id.* If it is clear on its face, courts will enforce a covenant as written. *Id.* "We construe covenants as a whole, keeping in mind their underlying purpose." *Id.* When the covenant is unclear, "courts resolve all doubts against the restriction and in favor of free and unrestricted use of property." *Id.*

## B. Condominium Property

■ Condominiums are a distinct type of property because ownership is made up of common elements. Two acts govern condominium ownership in Colorado. The Condominium Ownership Act ("the COA"), §§ 38–33–101 to –113, C.R.S. (2009), applies to condominium properties created before July 1, 1992. § 38–33.3–115, C.R.S. (2009). The Colorado Common Interest Ownership Act ("the CCIOA"), §§ 38–33.3–101 to –319, C.R.S.

(2009), applies to common interest communities created on or after July 1, 1992. § 38–33.3–115. The COA controls here because the Declaration creating Edelweiss was recorded in 1970 and the relevant events transpired before the 2003 Amended Declaration was recorded.[5]

■ The COA defines condominium ownership as consisting "of a separate estate in an individual air space unit of a multi-unit property together with an undivided interest in common elements." § 38–33–102. A condominium owner's interest in his or her individual air space unit and the common elements appurtenant to his or her unit are "inseparable." *Id.*

Condominiums established pursuant to the COA are governed by a recorded declaration defining "the character, duration, rights, obligations, and limitations of condominium ownership." § 38–33–103(2). If the declaration requires all condominium unit owners to be members of an association or corporation, then the declaration "shall be considered as covenants running with the land binding upon all condominium owners and their successors in interest." § 38–33–105(2). Section 15 of the original Declaration governing Edelweiss declares that, upon becoming an owner of a condominium unit at Edelweiss, a person "shall be a member of the Association and shall remain a member for the period of his ownership." Thus, the Declaration is a covenant running with the land. § 38–33–105(2); *see, e.g., In re Case,* 91 B.R. 102, 103 (Bankr.D.Colo.1988) (noting that a recorded condominium declaration is a covenant running with the land pursuant to Colorado law).

The COA defines "limited common elements" as a subset of "general common elements." *See* § 38–33–103(3), (5). "Parking areas" are among the condominium property defined by the statute as "general common elements." § 38–33–103(3).

## C. Adverse Possession Under Color of Title

■ Color of title under section 38–41–108 requires a paper writing purporting to con-

5. The Association argues the CCIOA entitles it to attorney's fees pursuant to section 38–33.3–123(c). We reject the Association's attorney's fees request because the COA, not the CCIOA, governs this dispute.

vey title to real property, but which, because of some defect, fails to do so. *See De Foresta v. Gast,* 20 Colo. 307, 309–10, 38 P. 244, 245–46 (1894); *see also Hinojos v. Lohmann,* 182 P.3d 692, 700 (Colo.App.2008). The Colorado color of title statute originally was enacted in 1874 as a territorial law, codified after statehood at ch. 60, sec. 1695, 1877 Colo. Gen. Laws 601. The statute has undergone only minor amendments since. *See, e.g.,* ch. 118, sec. 6, 1893 Colo. Sess. Laws 328 (changing the limitation period from five to seven years).

■■■ Color of title exists where a void, irregular, or defective deed appears to grant title. *See, e.g., Whitehead v. Desserich,* 71 Colo. 327, 330, 206 P. 384, 385 (1922) ("That a deed may be defective, and convey no title at all and yet give color of title is established beyond question."); *Parker v. Betts,* 47 Colo. 428, 430, 107 P. 816, 817 (1910); *Schlageter v. Gude,* 30 Colo. 310, 315, 70 P. 428, 429 (1902); *see also Hoge v. Magnes,* 85 F. 355, 357 (8th Cir.1898) (construing Colorado's color of title statute). The courts "have ... concurred in attaching no exclusive or peculiar character or importance to the ground of invalidity of an apparent or colorable title." *Lebanon Mining Co. of N.Y. v. Rogers,* 8 Colo. 34, 37, 5 P. 661, 662 (1884). As long as the paper writing purporting to grant title is recorded, *see Wostenburg v. Karme,* 53 Colo. 258, 258–59, 125 P. 118, 119 (1912), the color of title statute applies "as a protection to a person holding in good faith under a mere colorable title...." *De Foresta,* 20 Colo. at 309–10, 38 P. at 245.

■■■ Section 38–41–108 provides a shortened time period of possession for adverse possession: seven instead of the eighteen years prescribed by section 38–41–101, C.R.S. (2009). A successful color of title claim must satisfy all of the statute's elements:

> Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, who for seven successive years continues in such possession and also during said time pays all taxes legally assessed on such lands or tenements shall be held and adjudged to be the legal owner of said lands or tene-

ments *to the extent and according to the purport of his paper title.*

§ 38–41–108 (emphasis added). During the statutorily required seven years, the adverse possessor must show actual, exclusive, and continuous possession of the property in question. *Ginsberg v. Stanley Aviation Corp.,* 193 Colo. 454, 457, 568 P.2d 35, 38 (1977).

### D. Application to this Case

#### 1. Parking Space 21 Is a Condominium Common Element

■■ BB&C contends that parking space 21 is an unrestricted fee simple estate, not a condominium common element, that BB&C can convey to a third party despite the Declaration's restrictions and the language of the deed under which it asserts color of title. We disagree. Exhibit C of the Declaration pertaining to the conveyance of parking spaces, together with the deed of conveyance from the Lanas to BB&C plainly incorporating the Declaration, demonstrates that parking space 21 is a common element subject to restrictions on its alienability. Under Exhibit C, the developer's reserved right to lease or sell the ten non-appurtenant parking spaces to non-condominium owners applied only if the developer conveyed a parking space to a non-unit owner. Here, the developer conveyed parking space 21 to condominium unit owner, Edward Lana. Thus, the developer's reserved right does not apply and the Declaration's express provision that parking spaces are restricted common elements governs.

The Declaration allows a condominium owner to sell or lease a common element parking space only to another condominium owner or to the Association. Its manifest intent is to forbid exactly what BB&C proposes to have adjudged as its right in this case: that is, the ability to sell a common element parking space to a non-condominium owner. Pursuant to the Declaration, a unit owner "shall have the right to sell, lease or exchange a parking space, *but only to or with another owner, to the Association or to the Declarant.*" (emphasis added).

The fact that the Lanas' conveyance to BB&C violated this provision in the first instance is immaterial. If the conveyance was defective, it still could constitute color of title under the seven-year statute of limitations pursuant to section 38–41–108. The fact that the Association discussed and acknowledged BB&C's ownership of the space should not bar it from enforcing the Declaration and deed restriction against sale or lease to a non-condominium owner. Indeed, the Association's discussion and acknowledgement included a consensus that future sales of parking spaces should be restricted to condominium owners. Choosing not to enforce the covenant in this first instance should not bar the Association from seeking enforcement of the covenant in light of BB&C's attempt to sell the parking space to a non-condominium owner.[6] As the management company for the condominium, BB&C was aware of the parking space restrictions and took a deed explicitly incorporating those restrictions. BB&C can only stand in the Lanas' shoes under a purported conveyance that limits the alienability of parking space 21.

We reject BB&C's assertion that we should look to two Massachusetts cases for the proposition that the ten unassigned spaces are individual estates, not common elements. See *Beaconsfield Towne House Condo. Trust v. Zussman*, 416 Mass. 505, 623 N.E.2d 1115 (1993); *Commercial Wharf E. Condo. Ass'n v. Waterfront Parking Corp.*, 407 Mass. 123, 552 N.E.2d 66 (1990). These cases are distinguishable, as noted by the court of appeals, because they involve situations where the developer retained ownership in the parking spaces. In this case, the developer conveyed his interest in parking space 21 to condominium owner Edward Lana; consequently, this space remained a common element pursuant to the Declaration.

Classifying parking space 21 as a common element is also consistent with the governing statute and the Declaration incorporated into BB&C's deed because COA section 38–33–103(3) and section 1(d) of the Declaration recognize parking spaces as common elements. The condominium map attached to the Declaration further supports a finding that parking space 21 is a common element. The map explicitly states that all the parking spaces are limited common elements, defined by section 38–33–103(3) and (5) of the COA and the Declaration as a subset of general common elements.

## 2. Color of Title Does Not Enlarge Property Interest

▇▇▇ Adverse possession cannot result in a greater property interest than the dispossessed owner enjoyed. See, e.g., *Archuleta v. Gomez*, 200 P.3d 333, 348 (Colo.2009) (noting in an adverse possession case that "[a] water right decreed for irrigation purposes cannot lawfully be enlarged beyond the amount of historical beneficial consumptive use belonging to the perfected right").

▇▇▇ BB&C attempts through this quiet title action to enlarge upon the rights the Lanas possessed. The Lanas did not possess a right to freely sell or lease parking space 21, nor does the paper title they conveyed to BB&C purport to do so. To the contrary, the facts point to BB&C's acquisition of a restricted estate in parking space 21, equivalent to that of condominium owners. A plaintiff who succeeds in proving all the elements of section 38–41–108 is entitled to a judgment of legal ownership "to the extent and according to the purport of his paper title." § 38–41–108.

The trial court erred in granting summary judgment to BB&C for an unrestricted fee simple estate in parking space 21. On re-

---

6. Section 19 of the original Declaration, the enforcement provision, provides that:

*Compliance with Provisions of Declaration, By–Laws of the Association.* Each owner shall comply strictly with the provisions of the Declaration, the Certificate of Incorporation and By–Laws of the Association, and the decisions and resolutions of the Association adopted pursuant thereto as the same may be lawfully amended from time to time. Failure to comply with any of the same shall be grounds for an action to recover fees incurred in connection therewith, which action shall be maintainable by the Managing Agent or Board of Managers in the name of the Association on behalf of the owners or, in a proper case, by an aggrieved owner.

mand from the court of appeals, BB&C may be able to quiet its title under the color of title statute, thereby establishing legal ownership subject to the Declaration's alienability restriction. Nonetheless, BB&C is not entitled to a quiet title summary judgment freeing itself of the restrictions incorporated by the Declaration and the BB&C deed.

### III.

Accordingly, employing different reasoning, we affirm the judgment of the court of appeals reversing the trial court's grant of summary judgment. We return this case to the court of appeals for remand to the trial court for further proceedings consistent with this opinion.