506 P.3d 857
Anthony T. ACCETTA and Nancy Accetta, Plaintiffs-Appellants,
v.
BROOKS TOWERS RESIDENCES CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation; Mark Trenka in his official capacity as a member of the Board of Directors of Brooks Towers Residences Condominium Association, Inc. ; Marla Grant in her official capacity as a member of the Board of Directors of Brooks Towers Residences Condominium Association, Inc.; Bill Clarke in his official capacity as a member of the Board of Directors of Brooks Towers Residences Condominium Association, Inc.; Clay Courter in his official capacity as a member of the Board of Directors of Brooks Towers Residences Condominium Association, Inc.; Robb Green in his official capacity as a member of the Board of Directors of Brooks Towers Residences Condominium Association, Inc.; and Joan Foster in her official capacity as a member of the Board of Directors of Brooks Towers Residences Condominium Association, Inc., Defendants-Appellees.
Court of Appeals No. 20CA0690
Colorado Court of Appeals, Division VI.
Announced December 9, 2021
As Modified on Denial of Rehearing January 13, 2022
As Modified February 10, 2022
Foley & Mansfield, PLLP, Dustin J. Priebe, Englewood, Colorado; Podoll & Podoll, P.C., Robert C. Podoll, Greenwood Village, Colorado, for Plaintiffs-Appellants
Nemirow Perez, P.C., Ronald H. Nemirow, Miles Buckingham, Lakewood, Colorado, for Defendants-Appellees
Opinion by JUDGE FOX
¶ 1 The litigation giving rise to this attorney fees and costs appeal invoked the Colorado Common Interest Ownership Act (CCIOA), sections 38-33.3-101 to - 401, C.R.S. 2021, which governs the creation and operation of common interest communities in the state. See 506 P.3d 860 Accetta v. Brooks Towers Residences Condo. Ass'n , 2021 COA 87, 496 P.3d 821. In this challenge to the attorney fees and costs awarded in the merits litigation, we consider whether section 38-33.3-123(1)(c), C.R.S. 2021 — which requires a court to award reasonable attorney fees and costs to the prevailing party "[i]n any civil action to enforce or defend the provisions of [CCIOA] or of the declaration, bylaws, articles, or rules and regulations" — applies to a civil action concerning a common interest declaration that predates CCIOA.
¶ 2 We conclude that it does because CCIOA incorporates section 38-33.3-123 to pre-existing communities "with respect to events and circumstances occurring on or after July 1, 1992." § 38-33.3-117(1)(g), C.R.S. 2021. Therefore, we affirm the district court's award of attorney fees to Brooks Tower Residences Condominium Association, Inc., and the named members of its board of directors (collectively, the Association) in the underlying case.[1] We also grant the Association its appellate attorney fees and remand the case to the district court to determine and award such fees.
I. Factual Background
¶ 3 Anthony T. and Nancy Accetta own a unit in Brooks Tower, a condominium building in downtown Denver with almost 900 units. The Accettas’ litigation invoked CCIOA against the Association after they discovered that they were paying fifty percent more in common expenses than the owners of similar units in Brooks Tower.
¶ 4 Under the Association's governing declaration for Brooks Tower, the Accettas pay higher monthly dues and are assessed higher amounts for large projects than many other unit owners.
¶ 5 The Accettas sued the Association under CCIOA and argued that the statute requires the allocation of all common expenses by formula and prohibits unconscionable provisions. The Accettas requested that the court declare the Association's current allocation of common expenses invalid and award them their past overpayments.[2] ¶ 6 The Accettas requested summary judgment on their declaratory judgment claim, arguing that CCIOA applied and that Brooks Tower was a pre-CCIOA community (also known as a common interest community) because it was created before July 1, 1992. The district court ruled that the Association was governed not by CCIOA, but by the Condominium Ownership Act (COA), sections 38-33-101 to - 113, C.R.S. 2021.
¶ 7 Importantly, the COA does not provide for the recovery of attorney fees. Because of this, the Association moved to recover its attorney fees and costs under CCIOA section 38-33.3-123(1)(c), which applies to pre-CCIOA condominiums via section 38-33.3-117.
¶ 8 The district court ordered the parties to brief the interaction of sections 38-33.3-123 and -117. It then held a hearing on the matter. After considering the briefs and the evidence, the court awarded attorney fees to the Association pursuant to section 38-33.3-123(1)(c) of CCIOA, despite ruling that CCIOA did not govern the declaration. Concluding that the attorney fees provision applied to "pre-CCIOA" communities through section 38-33.3-117(1), the district court awarded attorney fees of $79,885.50 and costs of $3,447.89 to the Association.
506 P.3d 861 ¶ 9 The Accettas appeal the district court's order awarding attorney fees to the Association.
II. Analysis
¶ 10 The Accettas contend that the district court erred in three ways when it awarded attorney fees to the Association:
• by awarding fees under CCIOA despite concluding that the Association's declaration was governed by the COA;
• by awarding fees in excess of $10,000 — the amount of the Association's legal insurance deductible; and
• by including fees the Association incurred in connection with its unsuccessful joinder argument in the fee award.
¶ 11 We disagree with the Accettas’ contentions. We first conclude that the district court properly awarded fees under CCIOA to the Association for its successful defense of the Accettas’ claim under the statute. Second, we conclude that the awarded fee amount was proper regardless of the Association's insurance deductible. And finally, we conclude that the district court did not abuse its discretion in including the fees incurred for the unsuccessful efforts to join individual unit owners in the litigation.
¶ 12 We therefore affirm and remand the case to the district court to determine the amount of reasonable attorney fees to award the Association on appeal.
¶ 13 We now turn to each contention below.
A. Recovery of Attorney Fees Under CCIOA ¶ 14 First, the Accettas contend that because the Association prevailed on its theory that Brooks Tower was not governed by CCIOA, and instead by the COA, they are not entitled to fees under CCIOA. We disagree that the Association is barred from fee recovery under CCIOA after defending against an action brought under CCIOA.
1. Legal Principles
¶ 15 CCIOA is intended "to establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities." § 38-33.3-102(1)(a), C.R.S. 2021. CCIOA applies in its entirety to common interest communities "created" after its effective date of July 1, 1992. § 38-33.3-115, C.R.S 2021. It generally does not apply to communities created before its effective date except as section 38-33.3-117 provides. § 38-33.3-117(3) ; see also DA Mountain Rentals, LLC v. Lodge at Lionshead Phase III Condo. Ass'n , 2016 COA 141, ¶ 28, 409 P.3d 564 ; Giguere v. SJS Fam. Enters., Ltd. , 155 P.3d 462, 467 (Colo. App. 2006).
Except as provided in section 38-33.3-119, the following sections apply to all common interest communities created within this state before July 1, 1992, with respect to events and circumstances occurring on or after July 1, 1992 ....[3] § 38-33.3-117(1) (emphasis added).
¶ 16 Subsection (1)(g), in turn, makes common interest communities created before the effective date of CCIOA subject to section 38-33.3-123, the fee-shifting provision. And section 38-33.3-123(1)(c) requires:
In any civil action to enforce or defend the provisions of this article or of the declaration, bylaws, articles, or rules and regulations, the court shall award reasonable attorney fees, costs, and costs of collection to the prevailing party.
(Emphases added.)
¶ 17 We review the interpretation of statutes de novo. Nesbitt v. Scott , 2019 COA 154, ¶ 16, 457 P.3d 134. When interpreting statutes, we give effect to their plain and ordinary meaning. Id. at ¶ 20. Our aim in construing a statute is to give effect to the General Assembly's intent. 506 P.3d 862 Hernandez v. Ray Domenico Farms, Inc. , 2018 CO 15, ¶ 6, 414 P.3d 700.
2. Governing Statutory Provisions
¶ 18 After finding that the COA, not CCIOA, governed the dispute, the district court ruled that certain sections of CCIOA applied to the Association's declaration. Specifically, the district court concluded that section 38-33.3-117(1) applied CCIOA's prevailing party attorney fees provision, section 38-33.3-123(1)(c), to "events and circumstances" that occurred between June 30, 1992, and January 1, 2006 — even for communities governed by the COA. After making that distinction, the district court ruled that the pertinent events here — the 1995 amendment to the declaration and the Accettas’ 2005 purchase of their unit — were within that timeframe.
¶ 19 Because the declaration was updated in 1995 and the Accettas purchased their unit in 2005, we agree that the "events and circumstances" giving rise to the action were within the scope of the stated timeline (June 30, 1992, to January 1, 2006). See § 38-33.3-117(1).
¶ 20 The Accettas contend, and we agree, that section 38-33.3-123 of CCIOA (which is specified in section 38-33.3-117(1)(g) ) can only supplement the provisions of a declaration in existence as of June 30, 1992. But we are unpersuaded by the Accettas’ argument that Brooks Tower and the Association had no declaration until May 23, 1995 — and the Association therefore was created after the June 30, 1992, supplementation date.
¶ 21 It is true that the Association's predecessors and the former owners of Brooks Towers adopted a new declaration, wholesale, in 1995, but a declaration existed before June 30, 1992. That said declaration was later amended does not render it, or other community documents, void. See B.B. & C. P'ship v. Edelweiss Condo. Ass'n, 218 P.3d 310, 315 (Colo. 2009) (recognizing the existence of a condominium community's declaration filed in 1970, before its amendment in 2003). Therefore, we conclude that a declaration existed before CCIOA's effective date, and that said declaration may be supplemented by section 38-33.3-123, the attorney fees provision. See Crandall v. City of Denver, 238 P.3d 659, 661 (Colo. 2010) (we review de novo questions of law, including whether a statute requires an award of attorney fees).
¶ 22 Finally, the Accettas’ civil action against the Association was a civil action to enforce CCIOA's provisions. The first claim was for a declaratory judgment that CCIOA governs how the Association allocates percentage ownership interests. Though the claim was unsuccessful, the Accettas requested to enforce CCIOA's provisions and the Association's declaration was front and center in the dispute. Therefore, we conclude that under the plain language of section 38-33.3-123(1)(c) CCIOA's fee-shifting statute applies.
3. Edelweiss Is Inapplicable
¶ 23 Edelweiss , 218 P.3d at 315, is the only Colorado Supreme Court case to comment on whether a prevailing party may recover fees under CCIOA when the COA governs. The Accettas rely on Edelweiss to support their argument that the Association cannot be awarded fees under CCIOA after the district court found they were not governed by CCIOA.
¶ 24 In Edelweiss , a condominium community was formed through a declaration filed in 1970; an amended declaration was later filed in 2003 (post-enactment of CCIOA). The underlying dispute was whether parking spaces in a condominium community could be acquired through adverse possession contrary to the terms of the declaration. Id. at 311-12. The Colorado Supreme Court concluded that the condominium was governed by the COA before the recording of the 2003 Amended Declaration, but was governed by CCIOA after the recording of the Amended Declaration in 2003.
¶ 25 The Accettas’ reliance on Edelweiss is misplaced. The supreme court's opinion merely notes that the COA controlled the community in question because their "[d]eclaration ... was recorded in 1970 and the relevant events transpired before the 2003 Amended Declaration was recorded." Id. at 315 (emphasis added).
506 P.3d 863 ¶ 26 We do not read Edelweiss to always preclude an award of CCIOA fees to a pre-existing community. Although the court briefly stated (in a footnote) that an association was not entitled to attorney fees under section 38-33.3-123(1)(c) where the declaration was governed by the COA rather than CCIOA, the court did not consider the application of this section to pre-existing communities via section 38-33.3-117(1)(g), as we do here. Edelweiss , 218 P.3d at 315 n.5.
¶ 27 In the merits litigation, the district court concluded that its deviation from Edelweiss was justified because section 38-33.3-117 applies section 38-33.3-123(1)(c) of CCIOA to Brooks Tower as a pre-existing community. Because that provision incorporates CCIOA's attorney fees provision to pre-existing communities, we agree with the district court that the Association is entitled to fees and that Edelweiss does not control here.
¶ 28 Respectfully, we disagree with the dissent's analysis of Edelweiss . Our supreme court could not determine the impact of subsection 117 when that question was not before it. See Arnold v. Carey , 60 Colo. 499, 499, 158 P. 303, 303 (1915) (recognizing that it is not within the province of an appellate court to decide abstract or hypothetical questions).
B. Fee Recovery Limited to the Insurance Deductible Paid by the Association ¶ 29 Next, the Accettas contend that any attorney fees should have been limited to the amount of the insurance deductible paid by the Association — $10,000. The Association purchased a directors and officers insurance policy that covered the attorney fees and costs incurred in this case. The Association paid a $10,000 deductible. The insurance company then paid the remaining balance of the fees and costs. Because of this, the Accettas claim that recovery against them is not allowed because they are unit owners, and the governing declaration requires that insurers waive subrogation rights against unit owners.
1. Legal Background and Standard of Review ¶ 30 The collateral source rule was established to prevent a defendant from taking advantage of payments received by a plaintiff as a result of his contractual arrangements entirely independent of the defendant. See § 10-1-135(10)(a), C.R.S. 2021. Part of the rationale for the collateral source rule is that the party at fault should not be able to minimize his damages by offsetting payments received by the injured party through an entirely collateral source. Delta Air Lines, Inc. v. Scholle , 2021 CO 20, ¶¶ 17-18, 484 P.3d 695 ; Ratlief v. Yokum , 167 W.Va. 779, 280 S.E.2d 584, 590 (1981). The collateral source rule, therefore, bars a wrongdoer from offsetting his liability by insurance benefits independently procured by the injured party. ¶ 31 We review de novo the meaning and effect of statutory provisions, Nesbitt , ¶ 19, and recorded instruments, Kroesen v. Shenandoah Homeowners Ass'n , 2020 COA 31, ¶ 31, 461 P.3d 672.
2. Analysis
¶ 32 The Accettas argue that, if awarded any attorney fees, the Association should be limited to its $10,000 deductible because it has not incurred any fees. The Accettas also argue that the collateral source rule does not apply here because they helped pay for the insurance policy and, therefore, the collateral source of the additional award was not "wholly independent" of the wrongdoer. We disagree and conclude that the Association should recover all of its fees under the collateral source rule. ¶ 33 While the Accettas are generally correct that an insurer does not have a right of subrogation against its insured, this argument is misplaced. Subrogation is the "substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." Am. Fam. Mut. Ins. Co. v. DeWitt , 218 P.3d 318, 323 (Colo. 2009) (citation omitted). The Association is seeking its own fees.
506 P.3d 864 ¶ 34 The district court found that when an insured party is injured by the fault of another, the damages the injured party is entitled to recover from the party at fault cannot ordinarily be reduced by the amount the injured party's insurer may have paid on the claim. As the district court said, "we should not penalize people who have the foresight to buy insurance by reducing their damages."
¶ 35 The parties have not cited any cases in Colorado, and we know of none, that have held that the collateral source rule can be applied to attorney fees that are not awarded as a part of damages. But other states have held that the collateral source rule applies generally, in order to "prevent reduction in the damage liability of defendants simply because the victim had the good fortune to be insured or have other means of compensation." Ilosky v. Michelin Tire Corp. , 172 W.Va. 435, 307 S.E.2d 603, 615 (1983).
¶ 36 We conclude that the Association's foresight to purchase an insurance policy to cover its legal expenses does not preclude it from collecting the full amount of its attorney fees, regardless of how much it paid for its insurance deductible to cover its costs of defense against the Accettas. See Worsham v. Greenfield , 435 Md. 349, 78 A.3d 358, 371 (2013) ("[W]e hold that a party compelled to defend him[ ]self ... may recover the costs associated with that litigation ... regardless of whether those costs were paid by that party or by an insurance company or by another third person on the party's behalf.").
C. Fees for the Association's Unsuccessful Joinder Claim ¶ 37 Next, the Accettas contend that the district court erred when it awarded the Association the attorney fees it incurred in connection with its unsuccessful joinder argument. Specifically, they argue that if more than $10,000 is awarded to the Association, the award must be reduced by $25,380 — the amount of fees the Association incurred in connection with its unsuccessful attempt to join all the unit owners.
1. Additional Facts
¶ 38 Early in the case, the Association moved to dismiss, arguing that CCIOA barred the claims and that the individual unit owners were necessary parties. The district court initially denied the motion to dismiss. But then the district court ordered the joinder of the unit owners because the Association indicated it would not be an adequate representative.
¶ 39 Following the court's decision, the Accettas filed a special writ under C.A.R. 21 with the Colorado Supreme Court, which issued a rule to show cause as to why the joinder should not be vacated. The supreme court ultimately concluded that joinder was unnecessary and vacated the joinder order.[4] Accetta v. Brooks Towers Residences Condo. Ass'n, Inc. , 2019 CO 11, ¶¶ 34-35, 434 P.3d 600.
¶ 40 The district court resolved the dispute on summary judgment in favor of the Association. The court ruled that Brooks Tower was created before the effective date of CCIOA and declared that CCIOA did not govern Brooks Tower.
¶ 41 The district court awarded $25,380 to the Association, the amount expended on the unsuccessful joinder claim. The Association paid a $10,000 deductible, and the remainder of the fees were paid directly to counsel by the insurance company that had retained such counsel. Id.
¶ 42 The district court noted that the Association's motion to dismiss ultimately failed, but it disagreed that the time spent making it should be excluded from a fee application:
Litigation is almost always a series of wins and losses, which then flow largely inextricably into a result. As Plaintiffs conceded at oral argument, if Defendants had filed a motion for an extension of time that was denied, Plaintiffs would not be entitled to exclude the time spent on that motion from this fee application, merely on the theory that [Brooks Tower] lost the motion.
506 P.3d 865 2. Standard of Review and Law ¶ 43 We review the reasonableness of an attorney fees award for an abuse of discretion. Planning Partners Int'l, LLC v. QED, Inc. , 2013 CO 43, ¶ 12, 304 P.3d 562. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, and we will not overturn a trial court's determination of a reasonable attorney fees award unless it is patently erroneous and unsupported by the evidence. Planning Partners Int'l, LLC , ¶ 12 ; Payan v. Nash Finch Co. , 2012 COA 135M, ¶ 16, 310 P.3d 212. ¶ 44 An award of attorney fees must be reasonable. Tallitsch v. Child Support Servs., Inc. , 926 P.2d 143, 147 (Colo. App. 1996). In awarding attorney fees, the trial court may consider (1) the amount in controversy; (2) the length of time required to represent the client effectively; (3) the complexity of the case; (4) the value of the legal services to the client; and (5) awards in similar cases. Id. ; see also Colo. RPC 1.5(a) (also allowing for consideration of the amount involved and results obtained). To determine reasonable "prevailing party" attorney fees, the court calculates a "lodestar" amount, which represents the number of hours reasonably expended by the attorneys multiplied by a reasonable hourly rate. Tallitsch , 926 P.2d at 147. The court may then adjust the lodestar amount upward or downward by applying factors in Colo. RPC 1.5. Id.
3. Analysis
¶ 45 The Accettas contend that the district court's award of attorney fees was unreasonable because the district court included fees that the Association incurred in the course of its failed attempt to join all individual unit owners in the litigation.
¶ 46 The supreme court indicated that joining all unit owners would make the litigation so expensive that the Accettas would not want to continue with their claim. Accetta , 2019 CO 11, ¶ 12, 434 P.3d 600 ("[A]ppellate relief would likely be inadequate in this case because the significant expense of joining and serving some 500 other parties could render Accetta's pursuit of his claims cost prohibitive."). Therefore, the Accettas contend that the case should have been resolved sooner, reducing attorney fees in the process. Consequently, the Accettas contend that the Association's legal strategy was not reasonable and the district court should not have granted fees for this tactic.
¶ 47 We disagree that the district court's award of fees to the Association for its failed legal strategy to join the other unit owners was an abuse of discretion. The district court explicitly stated that it had considered all the relevant reasonableness factors. See Klein v. Tiburon Dev., LLC , 2017 COA 109, ¶ 39, 405 P.3d 470 ("The district court must make sufficient findings to permit appellate review of an attorney fees award."); cf. Carruthers v. Carrier Access Corp. , 251 P.3d 1199, 1211 (Colo. App. 2010) (where the district court failed to make sufficient findings, the attorney fees award was vacated and the matter remanded for further findings, including an order for the district court to explain the reasonableness of its award).
¶ 48 The district court specifically indicated that it had considered the "significant roadblock" in the form of spending "a considerable amount of time and money moving to dismiss for failure to join all the individual homeowners as indispensable parties." The court continually acknowledged that the Association was "ultimately ... unsuccessful on that motion." While the court did not provide a deep analysis, it acknowledged that it did consider this issue in the "results obtained" factor. See Bob Blake Builders, Inc. v. Gramling , 18 P.3d 859, 866 (Colo. App. 2001) ; see also One Creative Place, LLC v. Jet Ctr. Partners, LLC , 259 P.3d 1287, 1290 (Colo. App. 2011) (finding no error when the court stated that it had considered all relevant factors in making its determination).
¶ 49 The district court's award of fees was neither patently erroneous nor unsupported by the record. See Nesbitt , ¶ 16. Therefore, the district court did not abuse its discretion by determining that the Association's costs were reasonable in their totality, given that the Association ultimately prevailed against the Accettas on every claim they asserted. S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein , 2014 COA 171, ¶ 8, 343 P.3d 1044.
506 P.3d 866 D. Attorney Fees on Appeal ¶ 50 Finally, we consider the Association's request for attorney fees for this appeal pursuant to section 38-33.3-123(1)(c), made applicable by section 38-33.3-117(1)(g). We grant the Association's request. ¶ 51 We conclude that section 38-33.3-123(1)(c) requires an award of attorney fees to the Association based on its successful defense of the declaration in this appeal. Even if a pre-existing community is not subject to the entirety of CCIOA, it is subject to the requirement that fees be awarded to the prevailing party in a civil action to enforce or defend provisions of the community's declaration.
¶ 52 Pursuant to C.A.R. 39.1, we exercise our discretion to remand the case to the district court to determine the amount of reasonable appellate fees to be awarded to the Association.
III. Conclusion
¶ 53 The judgment is affirmed, and the case is remanded to the district court to determine and award the Association reasonable appellate attorney fees.
JUDGE JOHNSON concurs.
JUDGE WELLING dissents.
JUDGE WELLING, dissenting.
¶ 54 If I were writing on a clean slate, I would join the majority in full. But I'm not, which is why I reluctantly dissent.
¶ 55 As alluded to by the majority, it's my view that our supreme court's opinion in B.B. & C. Partnership v. Edelweiss Condominium Ass'n , 218 P.3d 310 (Colo. 2009), controls our disposition of the Accettas’ challenge to the trial court's award of attorney fees pursuant to section 38-33.3-123(1)(c), C.R.S. 2021.
¶ 56 My analysis begins with the statutory scheme, then turns to the supreme court's opinion in Edelweiss , and ends with how, taken together, they affect my analysis of the Association's request for an award of fees.
I. Statutory Scheme
¶ 57 The statutory scheme at issue is rather straightforward. CCIOA contains a fee-shifting provision, which provides:
In any civil action to enforce or defend the provisions of this article or of the declaration, bylaws, articles, or rules and regulations, the court shall award reasonable attorney fees, costs, and costs of collection to the prevailing party. § 38-33.3-123(1)(c).
¶ 58 As a general matter, CCIOA "applies to all common interest communities created within this state on or after July 1, 1992." § 38-33.3-115, C.R.S. 2021. But, "[e]xcept as expressly provided for in" section 38-33.3-117, C.R.S. 2021, CCIOA "shall not apply to common interest communities created within this state before July 1, 1992." § 38-33.3-117(3). The Association is a pre-1992 common interest community. See Accetta v. Brooks Towers Residences Condo. Ass'n , 2021 COA 87, ¶¶ 29-36, 496 P.3d 821.
¶ 59 To determine which provisions of CCIOA apply to the Association, as a pre-July 1992 common interest community, we must look to section 38-33.3-117. Indeed, subsection 117 explicitly applies CCIOA's fee-shifting provision to pre-CCIOA communities, as follows:
[T]he following sections apply to all common interest communities created within this state before July 1, 1992, with respect to events and circumstances occurring on or after July 1, 1992:
....
(g) 38-33.3-122 and 38-33.3-123 .... § 38-33.3-117(1) (emphasis added). (As noted above, section 38-33.3-123(1) is the fee-shifting provision.)
¶ 60 Thus, it would appear that, pursuant to section 38-33.3-117(1)(g), CCIOA's fee-shifting provision — section 38-33.3-123(1)(c) — applies even to pre-CCIOA communities (at least "with respect to events and circumstances occurring on or after July 1, 1992").
506 P.3d 867 II. Edelweiss
¶ 61 Based on the analysis above and plain language of CCIOA, it would seem that section 38-33.3-123(1)(c) — CCIOA's fee-shifting provision — should've applied to the dispute in Edelweiss .[1] The dispute there centered around the ownership of a parking space and whether, pursuant to the condominium association's declaration, the parking space could be conveyed to a nonresident third party. Edelweiss , 218 P.3d at 312. The plaintiff in Edelweiss contended that the disputed parking space was "an unrestricted fee simple estate, not a condominium common element, that [it] c[ould] convey to a third party despite the Declaration's restrictions and the language of the deed under which it assert[ed] color of title." Id. at 316 (emphasis added). In other words, the litigation in Edelweiss was an action to "enforce or defend ... the declaration," an action that falls squarely within the scope of section 38-33.3-123(1)(c), CCIOA's fee-shifting provision.
¶ 62 The condominium association prevailed in the litigation and requested an award of its fees pursuant to section 38-33.3-123(1)(c). The supreme court, however, rejected the condominium association's request, stating as follows:
The Association argues the CCIOA entitles it to attorney's fees pursuant to section 38-33.3-123(c). We reject the Association's attorney's fees request because the COA, not the CCIOA, governs this dispute . Edelweiss , 218 P.3d at 315 n.5 (emphasis added).
III. Squaring the Statute and Edelweiss
¶ 63 From just reading the statute, it would appear that the Association, as the prevailing party and by virtue of section 38-33.3-117(1)(g), is entitled to the benefit of CCIOA's fee-shifting provision. But the Association prevailed at trial (and the Accettas lost) because their dispute wasn't governed by CCIOA. Accetta , ¶¶ 16-18. Indeed, the centerpiece of this dispute was whether CCIOA governed. Id. at ¶ 28 (noting that "the issue at the heart of this dispute" is "whether [the Association] is governed by the provisions of CCIOA"). And the division in Accetta affirmed principally on the basis that CCOIA doesn't govern the parties’ dispute. Id. at ¶ 57 ("We have concluded that [the Association] isn't governed by CCIOA, either generally or as to the specific provisions at issue."). Thus, the Association in this case is in the same position as the condominium association in Edelweiss : it's the prevailing party in litigation that is governed by the COA, not CCIOA. Thus, in accord with footnote 5 of Edelweiss , it would seem that the Association isn't entitled to an award of its attorney fees.
¶ 64 True, this is a footnote, but I can't identify a rationale that would permit us, as an intermediate appellate court, to evade its reach. It isn't dicta; the supreme court was presented with a request for an award of attorney fees and resolved it in footnote 5. See, e.g. , People v. Vigil , 127 P.3d 916, 934 (Colo. 2006) (Statements in cases are dicta when "they [a]re not essential to the holdings of the cases."). Nor is there a contrary case or line of cases from our supreme court that calls the holding in footnote 5 into question. Simply put, in my view, the footnote binds us. See, e.g. , People v. Novotny , 2014 CO 18, ¶ 26, 320 P.3d 1194 (noting that the supreme court "alone can overrule [its] prior precedents concerning matters of state law"); 506 P.3d 868 People v. Gladney , 250 P.3d 762, 768 n.3 (Colo. App. 2010) (the court of appeals is "bound to follow supreme court precedent"); People v. Smith , 183 P.3d 726, 729 (Colo. App. 2008) (rejecting defendant's argument that supreme court precedent was wrongly decided because we are bound by decisions of the Colorado Supreme Court); cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc. , 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").
IV. Conclusion
¶ 65 When all is said and done, I admit that I can't reconcile the plain language of the statute — particularly the incorporation provision of subsection 117(1)(g) — and the supreme court's holding in footnote 5 of Edelweiss , 218 P.3d at 315, which rejected an attorney fees request "because the COA, not the CCIOA, governs this dispute." But more importantly, I can't find a path to award the Association its fees here without disregarding the supreme court's holding in footnote 5 of Edelweiss . And that isn't something that I think we, as an intermediate appellate court, have the latitude to do. For this reason, I respectfully dissent.
--------
Notes:
[1] The Association was sued as Brooks Towers Residences Condominium Association, Inc. (with a plural Towers), which explains the different name in the caption. The named members — sued in their official capacity as members of the board of directors — are Mark Trenka, Marla Grant, Bill Clarke, Clay Courter, Robb Green, and Joan Foster.
[2] The Accettas sought a declaration that the allocation provisions were invalid under CCIOA (1) section 38-33.3-207(2), C.R.S. 2021, which requires a declaration to state the formulas used to establish allocations of interests; (2) section 38-33.3-112(1), C.R.S. 2021, which permits a court to refuse to enforce an unconscionable clause in a contract relating to a common interest community; and (3) section 38-33.3-113, C.R.S. 2021, which imposes an obligation of good faith. They also brought non-CCIOA claims for breach of fiduciary duty, conversion, unjust enrichment, and negligence. The Accettas note that the current declaration does not include a set formula for allocating expenses. Instead, the original developer set fees for each unit, causing an unequal allocation among similar units.
[3] Section 38-33.3-119, C.R.S. 2021, provides an exception for communities created before July 1, 1992, that contain only ten or fewer units and are not subject to development rights, or if their declarations limit common expenses to the amount specified in section 38-33.3-116(1), C.R.S. 2021 (in which case they are subject only to sections 38-33.3-105 to -107, C.R.S. 2021 ). Additionally, section 38-33.3-119 provides an exception for those communities that elect to be governed by CCIOA. Neither exception applies to Brooks Tower.
[4] When the supreme court reviewed the joinder issue, Mr. Accetta was the only plaintiff in the case. Ms. Accetta was later joined as an additional plaintiff.
[1] To be sure, section 38-33.3-123(1)(c), C.R.S. 2021, only applies "with respect to events and circumstances occurring on or after July 1, 1992." § 38-33.3-117(1), C.R.S. 2021. All we know from the opinion in Edelweiss is that the dispute that gave rise to the litigation occurred in 2003. B.B. & C. P'ship v. Edelweiss Condo. Ass'n , 218 P.3d 310, 314 (Colo. 2009) ("The dispute between BB&C and the Association arose in 2003 when BB&C sought to replace a lost automatic garage door opener needed to access parking space 21 and the Association refused to provide it.") (emphasis added). Whether some aspects of the dispute stretched back to before July 1992 isn't at all clear from the opinion. But the supreme court certainly didn't rely on the temporal limitation of section 38-33.3-117(1) to conclude that section 38-33.3-123(1)(c) didn't apply to the party's dispute; instead it simply relied on the fact that "the COA, not the CCIOA, governs this dispute." Id. at 315 n.5. Thus, there's nothing in the opinion that would permit me to distinguish Edelweiss from our case based on when the "events and circumstances" occurred vis-a-vis July 1, 1992. See § 38-33.3-117(1).
--------